**In re John BRENNICK and Elaine Brennick, Debtors.**

**Bankruptcy No. 93–40360–JFQ.**

United States Bankruptcy Court,
D. Massachusetts.

Feb. 27, 1995.

Kevin J. Simard, Riemer & Braunstein, Boston, MA, for Robert L. Riemer.

Todd A. Feinsmith, Brown, Rudnick, Freed & Gesmer, Boston, MA, for debtors.

David Nickless, Trustee, Nickless & Phillips, Fitchburg, MA.

## OPINION

JAMES F. QUEENAN, Jr., Chief Judge.

Maradam Realty Trust ("Maradam") moves for an order directing the bankruptcy estate to pay it $4,960.50 in rent accrued before rejection of its lease. Maradam relies on the requirement of section 365(d)(3) of the Code that the estate "timely perform" its lease obligations prior to rejection. I grant the motion.

John Brennick and Elaine Brennick (the "Debtors"), who are husband and wife, filed a chapter 11 petition with this court on February 8, 1993. At the time of the filing, the Debtors operated in Massachusetts and elsewhere facilities for patients with serious brain injury caused by trauma. Among the locations was property at 100 Everett Avenue, Chelsea, Massachusetts leased by the Debtors from Maradam. The court granted the Debtors several extensions of time in which to assume or reject the lease. The Debtors eventually decided to reject the lease, and on April 6, 1994 the court issued an order approving the rejection.

The parties agree Maradam has an administrative expense claim of $4,960.50 for rent accrued prior to rejection. They part company, however, on whether there should be immediate payment. In their opposition to the motion, the Debtors state that "[v]irtually all of the Debtors' real property and fixed assets have been turned over to their principal secured creditors." The Debtors intimate the case is administratively insolvent, saying payment of Maradam's claim "would be prejudicial to other similarly situated administrative creditors."

The case has been converted to chapter 7 since the hearing on the present motion. Under section 726(b) of the Code, administrative expense claims incurred since the conversion have priority over those incurred while the case was in chapter 11. I assume for present purposes that estate property is insufficient to pay in full all administrative expense claims incurred during the chapter 11 case.

Maradam contends it is entitled to be paid now even though all chapter 11 or 7 administrative expense claimants will not be paid in full. It cites section 365(d)(3) of the Bankruptcy Code, which provides in part:

(3) The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period....

11 U.S.C. § 365(d)(3) (1988).

Subsection (d)(3) has been a conundrum for the courts. A few courts require immediate payment of prerejection rent even though

this may give the lessor better treatment than other administrative expense claimants. *E.g., In re Rare Coin Galleries of Am., Inc.,* 72 B.R. 415 (D.Mass.1987); *In re Telesphere Communications, Inc.,* 148 B.R. 525 (Bankr. N.D.Ill.1992). Many other courts observe that subsection (d)(3) does not purport to create a claim enjoying priority over other administrative expense claims, as is expressly done by section 364. For this reason, these courts decline to order a payment which, as a practical matter, would grant such priority. *E.g., In re Joseph C. Spiess Co.,* 145 B.R. 597 (Bankr.N.D.Ill.1992); *In re Virginia Packaging Supply Co., Inc.,* 122 B.R. 491 (Bankr.E.D.Va.1990); *In re Cardinal Indus., Inc.,* 109 B.R. 738 (Bankr. S.D.Ohio 1989); *In re Granada, Inc.,* 88 B.R. 369 (Bankr.D.Utah 1988); *In re Tandem Group, Inc.,* 61 B.R. 738 (Bankr.C.D.Cal. 1986) Some courts attempt to resolve the "timely perform" language with the absence of an express grant of priority. They order immediate payment of rent accrued during the pre-rejection period, but require later disgorgement to the extent necessary to provide the same dividend to other administrative expense claimants of equal rank. *E.g., In re Almac's, Inc.,* 167 B.R. 4 (Bankr.D.R.I. 1994); *In re Buyer's Club Mkts., Inc.,* 115 B.R. 700 (Bankr.D.Colo.1990); *In re Dieckhaus Stationers of King of Prussia, Inc.,* 73 B.R. 969 (Bankr.E.D.Pa.1987).

Most of the decisions seem to agree on at least two aspects of the statute. First, they rule the language "notwithstanding section 503(b)(1) of this title" does away with the need for a hearing authorizing payment of the administrative expense claim. And, second, they hold the amount of the claim is measured by the rent set forth in the lease rather than the property's fair rental value. *See, e.g., Towers v. Chickering & Gregory (In re Pacific–Atlantic Trading Co.),* 27 F.3d 401 (9th Cir.1994).

Section 365(d)(3) was added to the Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, 98 Stat. 333 (1984). Its legislative history is of limited help. Statements on the floor of Congress indicate the obvious—that Congress intended to include rent among the "obligations of the debtor" to be timely performed. The floor statements display empathy for the plight of a lessor who, unlike most postpetition creditors, is forced to extend credit to the bankruptcy estate for at least a limited period.[1] But there is no discussion of the problem created when the estate is administratively insolvent.

We therefore have not much more than the wording of the statute for guidance. To say it has a "plain meaning" would denigrate the courts who have disagreed on its meaning. Yet it does contain a clear com-

---

**1.** A second and related problem is that during the time the debtor has vacated space but has not yet decided whether to assume or reject the lease, the trustee has stopped making payments due under the lease. These payments include rent due the landlord and common area charges which are paid by all the tenants according to the amount of space they lease. In this situation, the landlord is forced to provide current services—without current payment. No other creditor is put in this position. In addition, the other tenants often must increase their common area charge payments to compensate for the trustee's failure to make the required payments for the debtor.

The bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease. This timely performance requirement will insure that debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease. For cause, the court can extend the time for performance of

obligations due during the first 60 days after the order for relief, but not beyond the end of such 60–day period. At the end of this period, the amounts due during the first 60 days would be required to be paid, and thereafter, all obligations must be performed on time. This permissible 60–day grace period is intended to give the trustee time to determine what lease obligations the debtor has and to locate the cash to make the required payments in exceptionally large or complicated cases. The bill does not require the performance of obligations specified in section 365(b)(2), which relate to solvency and financial conditions. The performance by the trustee of the debtor's obligations has no effect on the performance of the trustee's obligations under subsections (b) or (f) of section 365. The acceptance by the lessor of any payments made by the trustee as required by this subsection does not constitute a waiver or relinquishment of the lessor's rights under such lease or under the bankruptcy code.
130 Cong.Rec. S8, 994–95 (daily ed. June 29, 1984) (statement of Sen. Hatch).

mand—that the trustee "shall timely perform" the debtor's obligation to pay rent. This (and the similar provision in section 365(d)(10)) is the only provision in the Code requiring the estate to perform the debtor's obligations at all, much less in a "timely" manner. Legislative history gives us the reason for the command—the coercive nature of a lessor's extension of credit. The conclusion seems inescapable. The command must be obeyed even though to **do** so grants a priority as a practical matter.

Requirement of immediate payment of rent does not put Maradam in a unique position among all those with whom the Debtors had dealings. During the chapter 11 case, the Debtors did business in ordinary course with many parties who were paid in full— suppliers, employees and others. No one would suggest these parties should reimburse the estate to the extent necessary to provide equal treatment for any unpaid administrative expense claimants. It would be strange if those for whom Congress has shown special concern were treated less favorably than these paid chapter 11 claimants. This point is brought out in Judge Wedoff's decision in *In re Telesphere Communications, Inc.*, 148 B.R. 525, 529–31 (Bankr. N.D.Ill.1992). I agree with that well-reasoned decision.

It is said that subsection (d)(3) provides a right but not a remedy. That is true. It is also true that a lessor of an unassumed lease can use default in payment as ground for objecting to extension of the debtor's time for assumption or rejection. But that does not bring payment. And it is no help when, as here, the default occurs during the final extension period. In light of the statute's command of payment, I conclude, as did Judge Wedoff in *Telesphere*, that this is an appropriate case to exercise the court's powers under section 105(a), which authorizes the court to issue "any order … that is necessary or appropriate to carry out the provisions of this title." *See* 11 U.S.C. § 105(a) (1988).

A separate order has accordingly issued requiring the chapter 7 trustee to pay Maradam's claim immediately, to the extent of available funds. The order declares that

Maradam is not obligated to reimburse the trustee if there are insufficient funds to pay other chapter 11 or chapter 7 administrative expense claimants.