·In re NEW ALMACS, INC., Debtor.

# In re OCEAN EQUITIES CORP., Debtor.

### Bankruptcy Nos. 95–63372, 95–63373.

United States Bankruptcy Court,
N.D. New York.

April 22, 1996.

---

Menter, Rudin & Trivelpiece, P.C. (Jeffrey Dove, of counsel), Syracuse, New York, for Debtors.

Getnick, Livingston, Atkinson, Gigliotti & Priore, LLP (Nicholas Priore, of counsel), Utica, New York, for LM Associates, Citizens Savings Bank.

Bond, Schoeneck & King, LLP (James Dati, of counsel), Syracuse, New York, for Supervalue.

Melvin & Melvin (Louis Levine, of counsel), Syracuse, New York, for University Heights Associates.

Michael Collins, Assistant U.S. Trustee, Utica, New York.

**1.** Because the three motions involve the same issues of law and the relief being sought is basically the same, the Court has elected to consolidate them for the limited purpose of issuing this decision.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

The Court considers herein the motions of three lessors of nonresidential real properties ("Movants") whose leases were rejected by New Almacs, Inc. ("Debtor") postpetition. Movants seek relief pursuant to § 365(d)(3) of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code").[1]

LM Associates ("LM") filed its motion on January 8, 1996, seeking *inter alia* an allowance of a claim for administrative expenses, including postpetition rent, utilities, operating expenses, real estate taxes, and merchants association charges. LM Associates also requests that the payment of said claim be made within ten days of the date of the Court's order. The motion was heard at the Court's regular motion term in Utica, New York, on January 30, 1996, and was submitted to the Court for decision.

In the interim, a motion was filed by Citizens Savings Bank ("CSB") on March 11, 1996, requesting that it receive immediate payment on its claim for postpetition monthly rent, common facilities charges, debtor's pro rata share of real estate taxes and clean up costs associated with Debtor's surrender of the premises. In the alternative, CSB requests that it be allowed an administrative expense claim and that the Debtor be directed to pay said claim within ten days of the date of the Court's order. The motion was heard by the Court at its regular motion term in Utica, New York, on March 26, 1996.

Also on March 26, 1996, the Court heard a similar motion filed on March 6, 1996, by University Heights Associates ("UHA"). Counsel for UHA was given an opportunity to submit a memorandum of law within ten days of the hearing, and the Debtor was also permitted ten days to respond to any papers filed on behalf of UHA.[2] The matters were submitted for decision on April 16, 1996.

**2.** Local counsel for LM Associates, who also represents CSB, had previously been afforded an opportunity to brief the legal issues in connection with the motion heard on January 30, 1996, and submitted to this Court for decision.

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of these contested matters pursuant to 28 ˚U.S.C. §§ 1334(b), 157(a), (b)(1), (b)(2)(A), (B), and (O).

## FACTS

The Debtor filed a voluntary petition pursuant to Chapter 11 of the Code on September 20, 1995.[3] At the time the case was commenced, the Debtor was operating a chain of approximately 27 supermarkets in the Providence, Rhode Island and southeastern Massachusetts regions. The Debtor has continued to manage its business as debtor-in-possession under Code § 1107 and § 1108. Since the filing of its petition, the Debtor has sold a number of its stores and had assumed the nonresidential real property leases associated with those stores. The Movants herein have leases with the Debtor for store locations that were not sold and which have been rejected by the Debtor.

LM is a Pennsylvania limited partnership which is the landlord under a lease of nonresidential real property located in the Lincoln Center Mall, Lincoln, Rhode Island. Under the terms of the lease, the Debtor is obligated to pay *inter alia* rent, utility expenses, real estate taxes and common area maintenance charges (*see* Exhibit A of LM's Motion). LM seeks to recover $85,904.55 for the period between September 20, 1995, and February 1, 1996, the latter date being the day the Debtor allegedly surrendered the real property.

CSB is the owner of non-residential real property consisting of a shopping center located in Pawtucket, Rhode Island. The Debtor leased a portion of the property pursuant to a written lease which required the payment of monthly rent, as well as Debtor's share of real estate taxes and sewer taxes and other common facilities charges (*see* Exhibit A of CSB's motion). CSB alleges that although the Debtor paid it the base rent for October and November, 1995, the Debtor never made any payment for its pro rata share of common facilities charges or real estate taxes and failed to make payment of the base rent for December 1995 and January, 1996. CSB seeks to recover $42,299.31 in connection with the above lease obligations through January 20, 1995, as well as certain clean-up costs incurred following the Debtor's surrender of the premises.

UHA is a Rhode Island general partnership which owns a shopping center complex in Providence, Rhode Island. Debtor was the tenant of retail space in the shopping center pursuant to a written lease agreement which was deemed rejected as of January 21, 1996, pursuant to an Order of this Court signed February 9, 1996. UHA seeks to recover rent, common area maintenance charges, real estate taxes, security charges, and electric, water and sewer utility charges totalling $87,188.13 for the period from September 20, 1995, to January 21, 1996. UHA asserts that the Debtor should be required to pay its alleged claim immediately.

On November 6, 1995, the Debtor had filed a motion seeking to extend the time which it had to assume or reject certain nonresidential real property leases. Both CSB and UHA objected to the Debtor's motion. By Order dated December 15, 1995, the Court approved Debtor's motion but required that the Debtor "shall comply with Code § 365(d)(3)."

## DISCUSSION

Under the prior law there was no requirement that the debtor pay rent during the period between filing and the date of assumption or rejection [of a lease of nonresidential real property]. The lessor's claim for 'administrative rent' based on the reasonable value of the use and occupancy of the premises might have to await payment with other administrative claims at a later date. The new provisions require the debtor in possession or trustee to 'timely perform' all obligations under the lease of nonresidential real property notwithstanding Section 503(b)(1). 11 U.S.C. § 365(d)(3). *In re By–Rite Distributing,*

---

**3.** Ocean Equities Corporation, the Debtor's subsidiary, also filed a petition pursuant to Chapter 11 on September 20, 1995.

*Inc.,* 47 B.R. 660, 666 (Bankr.D.Utah), *rev'd on other grounds* 55 B.R. 740 (D.Utah 1985).

The trustee/debtor in possession is given a 60 day window of opportunity to decide whether to assume or reject the lease. In addition, the Court has the authority to extend the time for performance of any obligations that arise during that first 60 days after the order for relief, but "[a]t the end of this period, the amounts due during the first 60 days would be required to be paid, and thereafter, all obligations must be performed on time." *Id.* at 665, quoting remarks of Senator Hatch, 130 Cong.Rec. S8894–95 (daily ed. June 29, 1984), reprinted in 1984 U.S.Cong. & Admin.News 590, 599.

Section 365(d)(3) was added to the Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984) to ameliorate concerns that

during the time the debtor has vacated space but has not yet decided whether to assume or reject the lease, the trustee has stopped making payments due under the lease. These payments include rent due the landlord and common area charges which are paid by all tenants according to the amount of space they lease. In this situation, the landlord is forced to provide current services—the use of its property, utilities, security, and other services— without current payment. No other creditor is put in this position. *Id.*

It is just such a scenario that confronted the Movants whose leases had been rejected by Debtor several months after the commencement of this case, compelling them to file the motions *sub judice.*

The language of Code § 365(d)(3) is clear that the obligation of the Debtor to perform in a timely manner is mandatory, not permissive. As if this was not sufficient, this Court in its Order of December 15, 1995, which granted the Debtor's request to extend the time for it to assume or reject these leases, expressly required that the Debtor comply with Code § 365(d)(3).

The majority of courts agree that Code § 365(d)(3) entitles a lessor to an ad-

ministrative expense claim for the monies due under the lease without the necessity of a hearing to determine whether they constitute actual and necessary costs and expenses associated with preserving the estate. *In re Brennick,* 178 B.R. 305, 307 (Bankr.D.Mass. 1995) (citing e.g. *In re Pacific–Atlantic Trading Co.,* 27 F.3d 401 (9th Cir.1994)). This Court agrees with the majority's interpretation of Code § 365(d)(3), which includes the language "notwithstanding section 503(b)(1) of this title." It is unnecessary for the Movants to establish the fair and reasonable value of the Debtor's actual use and occupation of the respective properties. Indeed, actual occupancy by the Debtor is not necessary in order for the Movants to recover. Movants are entitled to administrative expense claims for the rental obligations due under their respective leases, including *inter alia* base rent, real estate taxes, common area maintenance charges and utility expenses. *See Pacific–Atlantic Trading Co., supra,* 27 F.3d at 405; *see also In re Child World, Inc.,* 150 B.R. 328, 331 (Bankr. S.D.N.Y.), *rev'd on other grounds* 161 B.R. 571 (S.D.N.Y.1993) (Code § 365(d)(3) "does not require a determination of the reasonable value of the debtor's post-petition use and occupancy and, instead, establishes the debtor's post-petition responsibility as comprising all the obligations under the lease until the lease is either assumed or rejected".).

The Movants argue that the language "notwithstanding section 503(b)(1)" suggests that their claims are not § 503 expenses at all but instead constitute "operational expenses" which should be paid immediately just as other expenses incurred by the Debtor "in the ordinary course of business" are. *See In re Telesphere Communications, Inc.,* 148 B.R. 525, 531 (Bankr. N.D.Ill.1992) ("[L]anguage of § 365(d)(3) should be read as requiring that rental payments be made according to the procedure for operational payments under § 363(c)(1).") The court in *Telesphere Communications* pointed out that the Chapter 11 debtor in continuing to operate its business postpetition routinely pays providers of goods and services to the estate without having to seek the court's approval. *Id.* at 530. These "op-

erational payments" allow the debtor to retain employees, hire outside services and maintain accounts with utility companies. *Id.* at 531. These entities have the option of terminating the relationship with the debtor in the event of nonpayment. Furthermore, the payments to them are not subject to disgorgement in the event that the estate is later determined to be administratively insolvent. As suggested by the courts in *Telesphere Communications* and *Brennick,* the same treatment should be extended to the lessor who has no choice but to continue its relationship with the debtor pending its determination whether to assume or reject the lease. In support of its position, the court in *Telesphere Communications* cited to Code § 363(c)(1) which allows the debtor to use property of the estate in the ordinary course of business without notice or a hearing.

Code § 363(c)(1) is discretionary in that it states that the debtor *may* use property of the estate in the ordinary course of business. In this instance, the Debtor elected not to pay the Movants the full amount of their claims from property of the estate.[4]

The fact that Code § 365(d)(3) makes reference to Code § 503(b)(1) lends support to the conclusion that the obligations are administrative expenses of the estate. As Code § 365(d)(3) makes specific reference only to one subsection of Code § 503, the logical conclusion is that the other subsections do have applicability. Indeed, Code § 503(a) provides Movants with the means by which they may seek payment of an administrative expense claim in the event that they do not receive timely payment as provided by Code § 365(d)(3). In addition, Code § 105(a) authorizes this Court to issue "any order ... that is necessary or appropriate to carry out the provisions of this title."

After careful review of the caselaw addressing Code § 365(d)(3), which was recently summarized in *The Case for Extending Super Administrative Priority Claims for Unpaid Rent under Section 365(d)(3),* 2 NORTON BANKR.L.ADVISER 5 (1996), the Court concludes that a somewhat different approach may be appropriate to the circumstances herein. In determining the treatment to be afforded the claims of the lessors in the cases reviewed by this Court, the courts failed to address any distinction with regards to the postpetition period for which the lessor sought an allowance of an administrative claim. For example, in *Telesphere Communications* the debtor, after seeking to extend the time in which to assume or reject the lease, had paid all rents due after the 60 day period following the filing of its petition. The lessor sought only to recover for the initial two months of the case. In *Brennick* and *In re Orvco, Inc.,* 95 B.R. 724 (9th Cir. BAP 1989), the lessors also were seeking payment for the first 60 days of the case. Most of the cases cited by the Debtor in support of its argument that a lessor is not entitled to superpriority status for its claim for rents prior to rejection, also involved situations in which there had been no extension of the time for assumption or rejection of the lease. *See e.g., In re United West, Inc.,* 87 B.R. 138 (Bankr.D.Nev.1988); *In re MS Freight Distribution, Inc.,* 172 B.R. 976 (Bankr.W.D.Wa.1994); *In re Granada,* 88 B.R. 369 (Bankr.D.Utah 1988); *In re Dieckhaus Stationers of King of Prussia, Inc.,* 73 B.R. 969 (Bankr.E.D.Pa.1987); *In re Cardinal Industries, Inc.,* 109 B.R. 738 (Bankr. S.D.Ohio 1989); *In re Four Star Pizza,* 135 B.R. 498 (Bankr.W.D.Pa.1992). In *In re Mr. Gatti's, Inc.,* 164 B.R. 929 (Bankr.W.D.Tex. 1994), the debtor had been granted additional time in which to assume or reject the lease, and the court was asked to award superpriority status to the claim of a lessor for rents accruing over a six month period following the commencement of the case. The court held that a lessor was not entitled to receive administrative priority for post-petition rent unless it was able to establish a benefit to the estate. *Id.* at 946.

In the case, *sub judice,* the Debtor sought to extend the time in which to assume or reject various nonresidential real property leases. The Court granted the Debtor's motion, concluding that the Debtor was to have an opportunity to attempt to sell the various leases before making a final determination

---

4. In this case, payments in the ordinary course of the Debtor's business are actually being made not from property of the estate but from cash collateral of one of its secured creditors.

whether to assume or reject at the various locations. Code § 365(d)(3) allows the Court to extend for cause the timely performance of a debtor with respect to obligations that arise within the 60 day period following the commencement of the case. The Court interprets Code § 365(d)(3) as requiring a debtor's "timely performance" of its obligations under a lease only after the 60 day period has elapsed.

■ It is the view of this Court that with respect to the rental obligations due under their respective leases, the Movants are entitled to an administrative expense for those first 60 days following the commencement of the case payable on the same basis as other administrative claimants pursuant to Code § 507(a)(1). However, with respect to the rental obligations which arose after the 60 day period, the Movants were entitled to receive *timely payments* from the Debtor pursuant to the terms of their respective leases until the date the leases were rejected in the instances in which the Debtor was granted an extension of the time in which to assume or reject the leases. Indeed, the Court's Order of December 15, 1995, granting the Debtor's motion emphasized that the Debtor was to make timely payments as required by Code § 365(d)(3) pending its decision to assume or reject the leases. Failure of the Debtor to make said payments entitles the Movants to a "superpriority" claim for obligations that arose under the terms of their leases as of November 20, 1995. Under these circumstances, the Court concurs with Judge Queenan's observation in *Brennick* that Code § 365(d)(3)'s "command must be obeyed [by the Debtor] even though to **do** so grants a priority as a practical matter." *Brennick, supra,* 178 B.R. at 308.

■ The approach which this Court proposes hopefully balances the interests of not only debtors and lessors but also reflects concern for the interests of other creditors, as well, that are entitled to recover from the estate. *See generally Child World, supra,* 161 B.R. at 574 ('[P]resumption in bankruptcy cases that the debtor's limited resources will be equally distributed among his creditors ...' (quoting *Trustees of Amalgamated Insurance Fund v. McFarlin's, Inc.,* 789 F.2d 98, 101 (2d Cir.1986))). The Court recognizes that a debtor should be afforded a reasonable opportunity to decide whether to assume or reject a lease of nonresidential real property. At the same time, the lessor is entitled to a certain degree of special consideration in the instance where it is being forced to await the debtor's decision to assume or reject is lease. Pursuant to Code § 365(d)(3), the lessor is no longer required to establish an actual benefit to the estate before being allowed an administrative claim for postpetition rent, a burden often impossible to meet in the instance where the debtor has physically vacated the premises. In addition, if the debtor finds itself unable to make a decision within the first 60 days following the commencement of its case and is allowed an extension of time to assume or reject the nonresidential real property lease, the lessor should be assured of full recovery on its claim during that extension period.

■ Code § 365(d)(3) leaves little discretion to the Court with respect to requiring the Debtor to treat the postpetition rent obligations on nonresidential real property leases as administrative expenses. The Court does, however, have a certain amount of discretion with respect to the timing of the payments in these situations. *Id.* at 576, citing *In re Photo Promotion Associates, Inc.,* 881 F.2d 6, 8–9 (2d Cir.1989). To the extent that funds are available, the Court will issue an order for payment to the Movants of the monies due under their respective leases for the period from November 20, 1995, to the effective date of rejection, within ten (10) days of the date of this Order. In the event that the Debtor lacks sufficient funds to comply with this Order, the Court will consider a request that enforcement be stayed. However, in the event that it is necessary to delay said payments, the Court wishes to make it clear that any such payments are to be made in full and are not dependent on the extent to which other administrative claims, including those of Movants for the 60 day period following commencement of the case, are paid. *See In re Leisure Time Sports, Inc.,* 189 B.R. 511, 513 (Bankr.S.D.Cal.1995) ("[L]andlord cannot be compelled to disgorge otherwise properly paid administrative rent payments

because a case subsequently proves to be administratively insolvent."); *but see In re MS Freight Distribution, Inc.*, 172 B.R. 976, 979 (Bankr.W.D.Wash.1994), citing to *In re Orvco*, 95 B.R. 724 (9th Cir. BAP 1989) (Landlord is entitled to a pro rata payment along with other administrative claimants if there are insufficient funds to pay all such claims.)

Based on the foregoing, it is hereby

ORDERED that CSB's motion seeking confirmation of Debtor's rejection of its lease as a matter of law as of January 20, 1996, is granted;[5] it is further

ORDERED that the motions of Movants are granted for payment of postpetition rent, including *inter alia* real estate taxes, common area maintenance charges and utility charges pursuant to the terms of its respective lease; it is further

ORDERED that Movants are allowed claims for administrative expenses for postpetition rent from September 20, 1995 through November 19, 1995, which are entitled to priority pursuant to Code § 507(a)(1); it is further

ORDERED that Movants are allowed superpriority claims for postpetition rent from November 20, 1995, until the rejection of their respective leases; and it is further

ORDERED that each Movant submit to the Court within fifteen (15) days of the date of this Order, an order and stipulation as to each Movant's claims for postpetition rent, setting forth the amount and allocation of said administrative expenses and providing for the payment by the Debtor of that portion allocated as a superpriority claim within ten (10) days of the date of said order. In the event that any Movant is unable to provide the Court with an order and stipulation in a timely manner, the Court will schedule an evidentiary hearing on the matter.

---

5. Although the Court did not discuss this aspect of CSB's motion in the decision herein, Debtor has indicated to the Court that it does not oppose said relief requested by CSB.