**In re TEL–CENTRAL
COMMUNICATIONS,
INC., Debtor.**

Bankruptcy No. 97–20683–2.

United States Bankruptcy Court,
W.D. Missouri.

Sept. 8, 1997.

David Going, St. Louis, MO, for LCI International Telecom Corporation.

Bruce Strauss, Kansas City, MO, Chapter 7 Trustee.

Jerry Venters, Jefferson City, MO, for Debtor.

Mark Carder, Kansas City, MO, for MCI Telecommunications Corporation.

A. Thomas DeWoskin, St. Louis, MO, for Atlas Communications.

### ORDER DENYING MOTION TO COMPEL IMMEDIATE PAYMENT OF ADMINISTRATIVE EXPENSE AND SPECIFIC PERFORMANCE OF ORDER

FRANK W. KOGER, Chief Judge.

This matter is before the Court on the Motion to Compel Immediate Payment of Administrative Expense and Specific Performance of Order filed by LCI International Telecom Corporation ("LCI"). For the following reasons the Court denies LCI's motion.

*Facts*

On May 23, 1997, Tel–Central Communications, Inc. ("Tel–Central") filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Tel–Central was a reseller of long distance telephone services that it purchased from LCI. The bankruptcy filing was precipitated by LCI's threat to discontinue long

distance telephone services because Tel–Central was delinquent in its payments to LCI in the amount of approximately $437,000.00.

On June 5, 1997, Tel–Central filed an emergency motion pursuant to section 366 of the Bankruptcy Code requesting that the Court establish a reasonable security deposit for the long distance telephone services which Tel–Central was purchasing from LCI. At the hearing held on June 11, 1997, LCI vigorously defended against the relief sought by Tel–Central asserting, among other things, that 11 U.S.C. § 366 did not apply because LCI was not a "utility" within the meaning of that statute. At the conclusion of the hearing, the Court ruled in favor of Tel–Central and memorialized its ruling in an Order Concerning Security Deposit filed on June 20, 1997, which states:

On the Motion of the Debtor herein, which came on for hearing on June 11, 1997, and to which LCI filed objections, on Debtor's request to establish security deposit for long-distance telephone service being obtained post-petition from LCI International Telecom Corp., it is

ORDERED as follows:

1. Debtor must pay the current statement of LCI by 3 p.m. CDT on Friday, June 13, 1997.

2. Debtor must post a $30,000.00 bond or other satisfactory security with LCI no later than Friday, June 20, 1997, by 3 p.m. CDT.

3. Debtor must pay the next two-week statement of LCI by 3 p.m. CDT on Friday, June 27, 1997.

4. Debtor must post an additional $30,-000.00 bond or other satisfactory security with LCI no later than Friday, July 4, 1997, by 3 p.m. CDT, thereby bringing the total of the deposit to $60,000.00.

5. Should Debtor fail to timely make any of the foregoing payments or deposits, LCI shall have the right, without further notice or hearing, to terminate services to the Debtor. After the $60,000.00 deposit has been made by the Debtor, LCI may not terminate further services with [sic] prior notice and hearing, but such hearing may be requested and held on an expedited basis.

6. By agreement of the parties, Debtor shall notify LCI if it anticipates a substantial increase in usage over $40,000.00 per two-week billing cycle, and LCI shall have the right to request additional security.

At the June 11, 1997, hearing, for the limited purpose of establishing the security deposit, the Court temporarily ruled against LCI on the issue of whether LCI is a "utility" within the meaning of section 366.

Tel–Central made the payment required on June 13, 1997, and posted a $39,000.00 security deposit by June 20, 1997, however, Tel–Central failed to make the payment required on June 27, 1997, and LCI terminated long distance services at approximately 5:23 p.m. on June 27, 1997. On July 16, 1997, after a hearing on a motion filed by the United States Trustee, the Court converted Tel–Central's Chapter 11 case to a Chapter 7 case pursuant to 11 U.S.C. § 1112(b). The conversion order was filed on July 23, 1997.

The motion presently under consideration was filed by LCI before the case was converted. Following conversion, LCI continues to pursue its motion. LCI requests that the Court enter an order compelling Tel–Central to immediately pay LCI the net amount of $33,738.76 for post-petition/pre-conversion telecommunication services provided to Tel–Central from June 11, 1997, through June 27, 1997, pursuant to the Order Concerning Security Deposit. The Chapter 7 Trustee, MCI Telecommunications Corporation, Atlas Communications, Ltd. and Tel–Central each object to LCI's motion contending that this pre-conversion Chapter 11 administrative expense is subordinate to Chapter 7 administrative expenses under 11 U.S.C. § 726(b), and that it would be inappropriate for the Court to order payment to LCI at this time. The Chapter 7 Trustee advised the Court that there is less than $13,000.00 on hand in the Chapter 7 bankruptcy estate. It is clear to the Court that if the Court grants LCI's motion, all of the available funds on hand would be paid to LCI and no further administration of the estate would be possible.

LCI argues that the Order Concerning Security Deposit provides the basis upon which it is entitled to be paid. LCI now

adopts the position that it is a utility; that it was forced by the Order Concerning Security Deposit to provide current utility services to Tel–Central without current payment; that it became, in effect, an involuntary extender of unsecured credit; and that like a lessor of nonresidential real property or personal property who is forced to extend post-petition credit to a debtor, a utility that is forced to extend post-petition services to a debtor is entitled to the same special protections because of the involuntary credit risk as those provided to lessors by sections 365(d)(3) and 365(d)(10) of the Bankruptcy Code. LCI contends that whereas 11 U.S.C. §§ 365(d)(3) and 365(d)(10) provide the statutory mandate for payment to lessors, this Court's Order Concerning Security Deposit provides the authority for the payment sought by LCI.

### Discussion

Even if the Court assumes for purposes of ruling on the present motion only that (1) LCI is a utility and is governed by 11 U.S.C. § 366; (2) the Court's Order Concerning Security Deposit has the same affect as 11 U.S.C. §§ 365(d)(3) and 365(d)(10) and, therefore, LCI should be treated the same as a nonresidential real property lessor or a personal property lessor is treated under the Bankruptcy Code; and (3) the post-petition/pre-conversion debt to LCI is a Chapter 11 administrative expense; the Court must deny LCI's motion in accordance with the distribution scheme set forth in 11 U.S.C. § 726(b).

Section 365(d)(3), which is part of the Bankruptcy Code provision that deals with the assumption or rejection of executory contracts and unexpired leases, states in relevant part that:

The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1)

of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60–day period.

11 U.S.C. § 365(d)(3).

Section 365(d)(10) is very similar and provides in relevant part that:

The trustee shall timely perform all of the obligations of the debtor, except those specified in section 365(b)(2), first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property (other than personal property leased to an individual primarily for personal, family, or household purposes), until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title, unless the court, after notice and a hearing and based or [sic] the equities of the case, orders otherwise with respect to the obligations or timely performance thereof

11 U.S.C. § 365(d)(10).

In *In re Worths Stores Corp.*, 135 B.R. 112, 114–15 (Bankr.E.D.Mo.1991), in which the bankruptcy court determined that in a Chapter 11 case a request for payment of post-petition/pre-rejection-ejection rent pursuant to section 365(d)(3) need not be made prior to rejection and need not meet the requirements of section 503(b)(1)(A)[1] in order to be given administrative expense priority, the court observed that:

The majority of courts appear to hold that § 365(d)(3) gives a lessor an administrative expense for lease obligations arising after the date of filing but before the earlier of the expiration of 60 days from filing or the actual date of assumption or rejection of the lease. This line of cases reads § 365(d)(3) as containing an unambiguous statement of Congressional intent that lessors of nonresidential realty receive the rent provided for in the lease until the lease is rejected. *In re Laurence R. Smith Inc.*, 127 B.R. 715, 716 (Bankr.

---

**1.** 11 U.S.C. § 503(b)(1)(A) provides that: "After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including

the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case."

D.Conn.1991) (citing numerous cases in support of this reading). A review of the legislative history for § 365(d)(3) supports the majority's position.

Prior to the 1984 amendments to § 365(d)(3), a landlord's claim for post-petition rent was limited to the estate's liability for the reasonable value of the use and occupancy of the premises. *In re ABC Books & School Supplies,* 121 B.R. 329, 330 (Bankr.S.D.Ohio 1990). Congress added § 365(d)(3) in order to ease the burden upon nonresidential lessors caused by the loss of rental income during the post-filing but pre-rejection period by creating an administrative expense claim governed exclusively by the terms of the lease. The legislative history provides:

> In this situation, the landlord is forced to provide current services—the use of its property, utilities, security, and other services—without current payment. No other creditor is put in this position.... The bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease. This timely performance requirement will insure that debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease. (*In re Longua,* 58 B.R. 503, 505, (Bankr.W.D. Wis.1986), quoting, 130 Cong. Rec. § 8894–95 (daily ed. June 29, 1984) (remarks of Senator Hatch)).

Based on this legislative history, the majority of cases holds that a lessor is entitled to an administrative expense for rent due under the lease notwithstanding the requirement that expenses be actual and necessary costs of preserving the estate under § 503(b)(1)(A) before they can be accorded administrative expense priority.

....

In addition to the legislative history behind § 365(d)(3), the majority finds support for its position in the unambiguous language of § 365(d)(3). The court in [*In re] Coastal Dry Dock [& Repair Corp.,* 62 B.R. 879 (Bankr.E.D.N.Y.1986) ], stated:

> In unmistakable terms, Section 365(d)(3), ... requires trustees or debtors-in-possession to timely perform the debtor's lease obligations, including payment of all rents reserved under the lease until the lease is assumed or rejected.... This obligation is made expressly independent of the normal standards for administrative expense claims under § 503(b)(1) and constitutes an administrative expense payable without notice and a hearing. *Id.* citing *In re Longua,* 58 B.R. 503, 505 (Bankr. W.D.Wis.1986).

The command of Section 365(d)(3) is clear and unambiguous and this Court agrees with the majority's reading of § 365(d)(3).

Further, policy reasons support the majority's conclusion that § 365(d)(3) provides administrative expense status to post-petition/pre-rejection rent claims. "To rule otherwise would give the [debtor] ... an incentive during the first 60 days of the case not to comply with the prompt payment mandate of § 365(d)(3) if there is a chance the lease will be rejected and may be at an above-market rent or if the debtor has not fully occupied the premises." [*In re] Washington Bancorporation,* [125 B.R. 328, 329 (Bankr.D.D.C.1991) ].

In *In re Leisure Time Sports., Inc.,* 189 B.R. 511, 513 (Bankr.S.D.Cal.1995) (citations omitted), the court stated:

> [L]egislative history reflects congressional concern for lessors of nonresidential real property, in contrast to other creditors, being forced to extend credit to an estate during the time given for assumption or rejection of a lease. Because such a lessor cannot terminate the relationship with the debtor if prompt payment is not assured, the lessor becomes, in effect, an "involuntary extender of unsecured credit."

*See also In re Pudgie's Dev. of N.Y. Inc.,* 202 B.R. 832, 835–36 (Bankr.S.D.N.Y.1996); *In re Telesphere Communications, Inc.,* 148 B.R. 525, 531 (Bankr.N.D.Ill.1992).

Section 365(d)(10) was added to the Bankruptcy Code by the Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106 (1994). "After the passage of the 60–day

abeyance period, the entitlement to ... rent is now automatic under § 365(d)(10)." *In re Elder–Beerman Stores Corp,* 201 B.R. 759, 763 (Bankr.S.D.Ohio 1996). In *Leisure Time Sports,* the court opined that sections 365(d)(3) and 365(d)(10) are the only Bankruptcy Code provisions requiring the estate to "'timely'" perform the debtor's obligations and constituted a "clear Congressional mandate that commercial lessors be given special protection." *Id.* at 513.

Section 366 of the Bankruptcy Code states: (a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

11 U.S.C. § 366.

In *In re Gehrke,* 57 B.R. 97, 98 (Bankr. D.Or.1985), the bankruptcy court ruled that section 366 and not section 365 governs written agreements for the furnishing of utilities and opined:

Pursuant to § 366(b), a debtor need not cure prepetition defaults in order to continue to receive utility service. In contrast, § 365 requires cure (or adequate assurance of prompt cure) of defaults as a condition to assumption. § 365(b)(1). Since § 366 does not require cure of prepetition defaults but § 365 does, both sections cannot be applicable at the same time.

The legislative history accompanying § 366 indicates that the section was designed to protect debtors from the cessation of utility service due to "the non payment of a bill that would be discharged in a bankruptcy case." Notes of Committee on the Judiciary, Senate Report No. 95–989. Section 366 therefore is an exception to § 365 and the former therefore governs agreements for the furnishing of utilities.

....

The fact that there is an express contract in writing does not remove the contract from the application of § 366.

In *In re Martinez,* 92 B.R. 916, 918 (Bankr.D.Colo.1988), in which the bankruptcy court determined that a post-petition/pre-conversion utility service debt was not entitled to administrative expense priority when the services were induced by the debtors' making of adequate protection payments rather than by an offer of administrative expense priority, the court observed that:

Clearly, no utility is required to continue service without some type of adequate assurance of payment. The legislative history from H.R. 95–595, 95th Cong., 1st Sess. 350 (1977), U.S.Code Cong. & Admin. News 1978, 5787, 6306, states that "[i]f an estate is sufficiently liquid, the guarantee of an administrative expense priority may constitute adequate assurance of payment for future services." However, there is nothing in the statute or the legislative history to indicate that utility companies are entitled to an automatic administrative expense priority.

*See also In re Woodland Corp.,* 48 B.R. 623, 624–26 (Bankr.D.N.M.1985) (utility was not entitled to an administrative expense priority for amounts due for post-petition electrical service when the utility and the debtor had negotiated adequate assurance and agreed on a $3000 deposit and there was no suggestion that an additional guarantee of administrative expense priority was even discussed); *In re Keydata Corp.,* 12 B.R. 156, 158 (1st Cir. BAP 1981) ("If continued electric service is, in the circumstances of the case, an 'actual and necessary' expense of preserving the estate, then [the utility] may be entitled to an administrative expense claim.").

■ Here, the Order Concerning Security Deposit entered in the Chapter 11 case pur-

suant to section 366 did direct Tel–Central to pay LCI certain amounts of money and to post security on specific dates. LCI was entitled to be paid in accordance with the Court's order. However, the Order Concerning Security Deposit did not automatically raise the post-petition/pre-conversion debt to LCI to the level of an administrative expense. Section 366 is an exception to section 365 of the Bankruptcy Code. Sections 365(d)(3) and 365(d)(10) create automatic rights for lessors of nonresidential real property and personal property that are not found in section 366. No such automatic right flowed from the Court's order entered under section 366. Upon reviewing additional evidence in future proceedings the Court may find that LCI is not a utility and/or that the post-petition/pre-conversion debt is not an administrative expense. In any event, there is an overriding concern in this case, which is the application of 11 U.S.C. § 726(b). Section 726(b) states:

> Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), (6), (7), or (8) of section 507(a) of this title, or in paragraph (2), (3), (4), or (5) of subsection (a) of this section, shall be made pro rata among claims of the kind specified in each such particular paragraph, except that in a case that has been converted to this chapter under section 1009, 1112, 1208, or 1307 of this title, a claim allowed under section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion and over any expenses of a custodian superseded under section 543 of this title.

11 U.S.C. § 726(b).

██ Pursuant to section 726(b), "[a]dministrative expenses of a subsequent chapter 7 case have a priority over administrative expenses of a prior chapter 11." *In re Mel–Hart Products Inc.*, 136 B.R. 197, 199 (Bankr.E.D.Ark.1991). *See also In re Sun Runner Marine, Inc.*, 134 B.R. 4, 5–6 (9th Cir. BAP 1991) (chapter 7 administrative expense claim has priority over a pre-conversion chapter 11 administrative expense claim

entitled to superpriority under section 507(b)); *In re Kaleidoscope of High Point, Inc.*, 56 B.R. 562, 565 (Bankr.M.D.N.C.1986) ("When a case has been converted from a Chapter [11] to a Chapter [7], section 726(b) specifies that the administrative expenses in the Chapter 7 have a higher priority than the preconversion Chapter 11 administrative expenses.").

In *Sun Runner Marine*, 134 B.R. at 7, the Ninth Circuit Bankruptcy Appellate Panel explained that:

> [S]ection 726(b) ensures that a liquidation will be carried out consistent with the expressed will of Congress by assuring payment of those who wind up the affairs of the debtor's estate. This encourages capable trustees and professionals to take part in the liquidation and maximizes the benefit for those with claims against the estate. *See, e.g., In re Roundwood Corp.*, 72 B.R. 296, 299 (Bankr.D.S.C.1987); *In re Codesco Inc.*, 18 B.R. 225, 227 (Bankr.S.D.N.Y. 1982).

LCI likens its situation to the circumstances faced by a nonresidential landlord or lessor of personal property and contends that the protections afforded to lessors by sections 365(d)(3) and 365(d)(10) are available to it under the Order Concerning Security Deposit. However, even if the Order Concerning Security Deposit could be construed as providing LCI with the same rights created for lessors under sections 365(d)(3) and 365(d)(10), LCI's rights are certainly no greater than those created by those sections. Lessors who have post-petition/pre-conversion claims are subject to the operation of section 726(b). Therefore, the priority of LCI's claim is likewise governed by section 726(b).

In *In re Tandem Group, Inc.*, 61 B.R. 738 (Bankr.C.D.Cal.1986), following conversion of the debtor's Chapter 11 case to a Chapter 7 case, the debtor's nonresidential real property landlord applied to the bankruptcy court under section 365(d)(3) for the immediate payment of post-petition/pre-conversion unpaid rent. The Chapter 7 trustee objected asserting that pursuant to section 726(b) the landlord's administrative expense claim incurred in the Chapter 11 case could not be

paid until it was determined that funds existed to pay all of the Chapter 7 administrative expenses. The bankruptcy court agreed recognizing that a conflict existed between section 365(d)(3) and section 726(b) of the Bankruptcy Code. The court opined:

Subsection 726(b) provides that administrative expenses incurred while a case is pending under Chapter 7 shall be paid prior to expenses of administration accrued under any other chapter proceeding. The Trustee herein responded to landlord's application by asserting that landlord may not be paid until it is clear that sufficient funds exist to pay all Chapter 7 expenses. If the rent required under section 365(d)(3) is entitled to no greater status than an expense of administration, then the Trustee's argument must prevail. This court has found no evidence that Congress intended a superpriority for subsection 365(d)(3) expenses.

. . . .

Had Congress intended to create a superpriority for subsection 365(d)(3) it would have done so by express statutory language. As the court in *Galvan, supra,* correctly indicates, rent due during the sixty-day period remains an expense of administration. *In re Galvan, supra,* 57 B.R. [732, 733 (Bankr.S.D.Cal.1986) ]. This court ... holds that subsection 365(d)(3) rent is an administrative expense, entitled to no greater priority than other expenses of administration. Therefore, the order of payment established by subsection 726(b) applies to the rent sought by Alcan.

Trustee's objection to payment of any Chapter 11 expenses before he ascertains whether sufficient funds exist to pay Chapter 7 administrative expenses is sustained. Furthermore, until the Trustee informs the court and moving party that the estate contains sufficient funds to pay anticipated Chapter 7 expenses and Chapter 11 expenses, ... the court postpones its determination of the amount of administrative rent due and owing to moving party.

*Tandem Group,* 61 B.R. at 741–42.

There are reported cases in which after a Chapter 11 case was converted to a Chapter 7 case the bankruptcy court ordered the immediate payment of a nonresidential real property lessor's claim for post-petition/pre-conversion unpaid rent. However, those courts acknowledged that the lessors' Chapter 11 administrative expense claims were governed by the distribution scheme set forth in section 726(b) and provided in the orders directing immediate payment that the lessors would be required to disgorge the payments if the bankruptcy estate lacked the funds to pay all of the Chapter 7 administrative expense claims and all of the Chapter 11 administrative expense claims in full. *See In re Buyer's Club Markets, Inc.,* 115 B.R. 700, 702 (Bankr.D.Colo.1990); *In re Dieckhaus Stationers of King of Prussia, Inc.,* 73 B.R. 969, 973–74 (Bankr.E.D.Pa.1987). *See also In re Lochmiller Indus., Inc.,* 178 B.R. 241 (Bankr.S.D.Cal.1995) (bankruptcy court ordered Chapter 11 professionals to disgorge amounts paid to them as Chapter 11 administrative expense claims upon determination that Chapter 7 estate was administratively insolvent; orders directing payment specifically provided for disgorgement in event of administrative insolvency).

However, in *In re Brennick,* 178 B.R. 305 (Bankr.D.Mass.1995), the bankruptcy court determined that the Chapter 7 trustee was required to immediately pay a nonresidential real property landlord's claim for post-petition/pre-conversion/pre-rejection unpaid rent to the extent of available funds, and that the landlord would not be required to disgorge the payment if there were insufficient funds in the bankruptcy estate to pay the Chapter 7 or other Chapter 11 administrative expense claims because of administrative insolvency. In so ruling, the bankruptcy court recognized the existence of section 726(b) and assumed that estate property was insufficient to pay in full all of the Chapter 7 and Chapter 11 administrative claims, but relied on the language in section 365(d)(3) of the Bankruptcy Code requiring that the "trustee 'shall timely perform' the debtor's obligation to pay rent" and pursuant to section 105(a) ordered the Chapter 7 trustee to immediately pay the landlord. *Brennick,* 178 B.R. at 306–308.

This Court disagrees with the ruling in *Brennick,* which totally ignores the

statutory distribution scheme set forth in section 726(b). A bankruptcy court has a " 'duty, under established principles of statutory construction, to give effect, if possible, to every clause and word of the [Bankruptcy Code].' " *In re Monroe Well Serv. Inc.*, 83 B.R. 317, 320 (Bankr.E.D.Pa.1988) (quoting *Bell v. United States*, 754 F.2d 490, 498–99 (3d Cir.1985)). This Court must interpret sections 365(d)(3) and 365(d)(10) consistently with section 726(b), *see Monroe Well Serv.*, 83 B.R. at 320, and should not read sections 365(d)(3) and 365(d)(10) in isolation from the rest of the Bankruptcy Code, *see Tandem Group*, 61 B.R. at 741. "In construing potentially inconsistent provisions of the Bankruptcy Code, the different sections should, if possible, be interpreted in a manner that harmonizes the discrepancy, rather than highlights it." *Tandem Group*, 61 B.R. at 741.

■ This Court concludes that the conflict between sections 365(d)(3) and 365(d)(10) and section 726(b) is most easily reconciled by following the holding in *Tandem Group*. The Court determines that if a lessor of a Chapter 11 debtor has not been paid postpetition in accordance with the mandate in sections 365(d)(3) and 365(d)(10) prior to the conversion of the case to a Chapter 7 proceeding, the lessor has a Chapter 11 administrative expense claim that cannot be paid until it is determined whether the bankruptcy estate has sufficient funds to pay all of the Chapter 7 and Chapter 11 administrative expenses. *Tandem Group*, 61 B.R. at 742. In rare circumstances, the Court may find that immediate payment subject to disgorgement is appropriate, *see Buyer's Club Markets* and *Dieckhaus Stationers*. However, before this Court will enter such an order it must be shown that there is a high likelihood that the bankruptcy estate will be administratively solvent, which certainly is not the case here. Accordingly, even if LCI's claim based upon unpaid post-petition/pre-conversion long distance telephone services to Tel–Central should be treated as the equivalent of a lessor's claim under sections 365(d)(3) or 365(d)(10), LCI is not entitled to immediate payment on its claim.

Finally, *In re Peaberry's Ltd.*, 205 B.R. 6 (1st Cir. BAP 1997), a case cited by LCI, is distinguishable. In *Peaberry's* the First Circuit Bankruptcy Appellate Panel determined that because the assumption order in which the debtor assumed the nonresidential real property lease expressly provided that the debtor would pay to the landlord all rental arrearages in full from the proceeds of the sale of the debtor's assets as adequate assurance of full performance, that order provided the basis from which the landlord was entitled to the immediate payment of the rental arrearages after the sale of the debtor's property and after conversion of the Chapter 11 case to a Chapter 7 case even though the estate had insufficient assets to pay all the other Chapter 11 administrative expense claimants. The panel opined that by its terms the prior order established the priority of the landlord vis-a-vis the estate and the other creditors, and the bankruptcy court could not rewrite the assumption order's terms by denying immediate payment to the landlord of the rent due. *Peaberry's*, 205 B.R. at 8–10.

Here, the Order Concerning Security Deposit was of limited scope and certainly did not establish the priority of LCI's claim in the distribution of the assets of Tel–Central's estate. The Court will not order LCI to be paid immediately on its post-petition/pre-conversion claim and will deny LCI's Motion to Compel Immediate Payment of Administrative Expense and Specific Performance of Order.

### Conclusion

Based on the above discussion, the Motion to Compel Immediate Payment of Administrative Expense and Specific Performance of Order filed by LCI International Telecom Corporation is DENIED.

The foregoing Memorandum Order constitutes Findings of Fact and Conclusions of Law as required by Fed. R. Bankr.P. 7052.