**In re MICROVIDEO LEARNING SYSTEMS, Debtor.**

**Calet Hirsch & Ferell, Inc., Appellant,**

v.

**Microvideo Learning Systems, Appellee.**

**No. 99 Civ. 3808(HB).**

United States District Court,
S.D. New York.

Dec. 1, 1999.

Michael P. Richman, David Michael Hillman, Mayer, Brown & Platt, New York City, for appellant.

Scott S. Markowitz, Todtman, Nachamie, Spizz & Johns, P.C., New York City, for appellee.

*MEMORANDUM & ORDER*

BAER, District Judge.[1]

Plaintiff–Appellant Calet, Hirsch & Ferell, Inc. ("CHF"), landlord of the defendant-appellee and debtor, Microvideo Learning Systems, appeals from the Bankruptcy Court's denial of appellant's motion to compel debtor to pay post-petition rent due under a lease of nonresidential property. For the reasons discussed below, the Bankruptcy Court is AFFIRMED.

---

1. Erez Gilad, a third-year law student at the Benjamin N. Cardozo School of Law, assisted with the research for and preparation of this opinion.

## I. BACKGROUND

On September 20, 1994, the debtor entered into a sublease agreement with CHF for use until June 29, 1999 of office space located at 250 Park Avenue South, New York, New York. On July 9, 1998, the debtor filed a Chapter 11 bankruptcy petition and was at that time $79,581.49 in arrears on rent.

Pursuant to section 365(d)(4) of the Code, a lease for nonresidential property is deemed rejected sixty days after the date the debtor files for bankruptcy unless the debtor assumes the lease or the bankruptcy judge extends the sixty day period for cause. 11 U.S.C. § 365(d)(4). On August 18, 1998, pursuant to § 365(d)(4), the debtor filed a motion to extend time to assume or reject the lease until June 29, 1999, the expiration date of the original sublease. CHF objected on the grounds that such a delay would amount to an assumption of the lease, and that the extension should not be granted unless the debtor cured its pre-petition defaults. On September 29, 1998, the bankruptcy court extended the deadline to January 8, 1999 on the condition that debtor pay all post-petition rent owed through October 31, 1998. The debtor complied but later defaulted for the month of December.

On January 7, 1999, the debtor again filed a motion to extend the deadline to June 29, 1999. CHF renewed its objections because at this time debtor was in arrears on its December 1998 rent. On January 15, 1999, while the second motion to extend was pending, debtor paid its December rent but defaulted for the months of January and February. On February 5, 1999 the Bankruptcy Court denied the second motion and deemed the lease rejected, effective February 8, 1999.

On February 22, 1999, pursuant to section 365(d)(3), CHF filed a motion to immediately compel the debtor to pay all post-petition, pre-rejection rent then currently due.[2] Debtor objected on the grounds that it was administratively insolvent. On April 28, 1999, the bankruptcy court denied the motion to compel, and the appellants now appeal from that order.

## II. DISCUSSION

■ This court must review the Bankruptcy Court's conclusions of law *de novo*. *See Capital Communications Federal Credit Union v. Boodrow*, 126 F.3d 43, 47 (2d Cir.1997).

■ For purposes of this appeal, both parties concede that the estate is currently administratively insolvent. Thus, the sole issue here is a legal one: whether a lessor (in this case, a sublessor) of nonresidential property, leased (in this case, subleased) by a Chapter 11 debtor, is entitled to the immediate payment of post-petition, pre-rejection rent pursuant to section 365 of the Code, despite the fact that the estate is administratively insolvent. Stated another way, the question is whether such a lessor is entitled to a "superpriority" over other administrative claimants. This circuit has not yet ruled upon this precise issue, and while a detailed analysis and discussion of all relevant cases seems unnecessary, a brief discussion is warranted.

As part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353 (1984), Section 365 was added to the Bankruptcy Code to ameliorate several shortcomings of the Bankruptcy Code. Before 1984, for example, debtors and trustees were not required to immediately pay rent during the period between the filing of a bankruptcy petition and the date of the assumption or rejection of a nonresidential lease. *In re New Almacs, Inc.*, 196 B.R. 244, 247 (Bankr.N.D.N.Y.1996). In

---

**2.** Section 365(d) of the Bankruptcy Code reads, in relevant part:

(3) The trustee shall *timely perform all the obligations of the debtor*, except those specified in section 365(b)(2), arising from and

after the order for relief under any unexpired lease of nonresidential property, until such lease is assumed or rejected, *notwithstanding section 503(b)(1)* of this title.
11 U.S.C. § 365(d)(3) (emphasis added).

this respect, the landlord was akin to an "involuntary creditor" who, unlike the post-petition trade creditors of a chapter 11 debtor, did not voluntarily bear the risks of dealing with a chapter 11 debtor but was nevertheless forced to supply current services without current payment. *See* 130 Cong.Rec. S8, 994–95 (daily ed. June 29, 1984) (statement of Sen. Hatch). Furthermore, landlords' claims for post-petition rent were regarded as administrative claims, usually measured pursuant to § 503(b)(1) [3] by the reasonable value of the estate's use and occupancy of the premises, and were paid, if at all, with other administrative claimants only after receiving court approval. *New Almacs,* 196 B.R. at 247.

■ As amended then, § 365(d)(3) was intended to ease the financial burdens endured by lessors of nonresidential lease properties by requiring debtors to "timely perform" their obligations under the lease. Thus, as the courts have routinely held, debtors are now required to pay pre-rejection rent as it becomes due if it appears that the assets of the estate are sufficient to meet the debtors' other administrative obligations. *In re Pudgie's Dev. of N.Y.,* 223 B.R. 421, 426 (Bankr.S.D.N.Y.1998); *In re Wingspread Corp.,* 116 B.R. 915, 926 (Bankr.S.D.N.Y.1990). However, § 365 does not make clear the extent of the debtor's obligation to pay pre-rejection rent where the debtor's estate is administratively insolvent. Nor does the section explain what remedies are available to the landlord in the event the debtor defaults during this period.

The appellant, consistent with the minority of courts that have decided this issue, argues that a non-residential lessor is entitled to pre-rejection rent on a superpriority basis even if the estate is ad-ministratively insolvent. First it argues that the plain meaning of the word "timely" as provided by section 365, mandates that the debtor make payment immediately as they become due, regardless of whether a debtor is administratively solvent. CHF also argues that the phrase "notwithstanding section 503(b)" serves to distinguish pre-rejection rent from other administrative claims, thereby granting landlords in such cases a *de facto* superpriority.

I find the appellant's reasoning unpersuasive. Appellee, consistent with the majority of the courts that have decided this issue, essentially—and correctly—argues that there is no express language in the Code that grants the landlord a superpriority as advocated by the appellant. Indeed, when Congress has chosen to grant a priority status to certain creditors, it has done so using explicit and clear language. *See e.g.,* 11 U.S.C. § 507(b) (granting certain 507(b) claims superpriority status); 11 U.S.C. § 726(b) (granting superpriority to Chapter 7 administrative claims over Chapter 11 administrative claims); 11 U.S.C. § 364(c)(1) (granting bankruptcy courts authority to afford superpriority status to post-petition borrowings when the debtor is unable to obtain unsecured credit). Further, this circuit concluded in *In re Ionosphere Clubs, Inc.,* 22 F.3d 403 (2d Cir.1994), that "[p]riorities are to be fixed by Congress. Courts are not free to fashion their own rules of superpriorities or subpriorities within any given priority class." *Id.* at 408 (citing 3 Lawrence P. King, *et al.,* Collier on Bankruptcy ¶ 507.02[2] (15th ed.1993)). *See also In re Granada,* 88 B.R. 369 (Bankr.Utah 1988) ("In the absence of such Congressional direction with regard to section 365(d)(3) claimants, it would be inappropriate to imply the existence of an automatic superpri-

**3.** Section 503(b) of the Bankruptcy Code provides, in relevant part:

After notice and hearing, there shall be allowed administrative expenses ... including ...

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries or commissions for services rendered after the commencement of the case.
11 U.S.C. § 503(b)(1)(A).

ority status.") (quotations omitted); *In re Tandem*, 61 B.R. 738, 742 (Bankr.C.D.Cal. 1986) ("Had Congress intended to create a superpriority for subsection 365(d)(3) it would have done so by express statutory language.") Neither section 365 or section 503(b) govern such priorities and neither section was intended to grant a landlord priority over other administrative claimants.

With respect to the appellant's arguments concerning the "notwithstanding section 503(b)" language contained in § 365(d)(3), this phrase simply mandates that the basic requirements of 503(b) are no longer required for landlords in CHF's position. In other words, under § 365(b)(3), nonresidential lessors need not obtain an express order authorizing payment of administrative rent claims. Moreover, such lessors are entitled to be paid the *full* amount of rent due under a lease, i.e. without the limitations of the traditional factors contained in § 503(b)(1) such as actual or reasonable use. Thus, a landlord is not entitled to a superpriority but is entitled to immediate payment of pre-rejection rent only if it is shown that the estate is administratively solvent.

■ I should note that the landlord, as an administrative claimant, is not without remedy. Specifically, the landlord may still: (1) file a motion seeking an order to compel the debtor to pay pre-rejection rent immediately; (2) move for an order requiring debtor to surrender the premises; (3) file a motion for relief from the stay and evict the debtor; or (4) move for an order to convert the case to chapter 7. *See In re J.T. Rapps, Inc.*, 225 B.R. 257, 263 (Bankr.D.Mass.1998).

Ultimately, the appellant and the minority position would have this Court venture upon a priority scheme that is neither mandated by section 365 nor intended by Congress. This position would place this court and every bankruptcy court in the difficult position of determining who among the several examples of "superpriorities" now has the highest "priority." In light of the remedies that remain available to the lessor, and absent a clear mandate from Congress, this Court may not disturb the longstanding distribution scheme and policy goals of the Bankruptcy Code.

### III. CONCLUSION

Thus, for the reasons discussed above, the order of the Bankruptcy Court denying CHF's motion to compel immediate payment of rent is hereby AFFIRMED. The Clerk of the Court is directed to close this case.