**In re PEABERRY'S, LTD., Debtor.**

**Bankruptcy No. 94–11783.**

United States Bankruptcy Court,
D. Rhode Island.

July 18, 1996.

Matthew J. McGowan, Chapter 7 Trustee, Providence, RI.

Andrew Richardson, Providence, RI, for The Krikor Dulgarian Trust.

Joseph Avanzato, Providence, RI, for Unified Management Corp. of Rhode Island Inc.

*DECISION AND ORDER DENYING LESSOR'S REQUEST FOR SUPERPRIORITY CLAIM STATUS*

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on May 29, 1996, on an objection to the proposed order submitted by The Krikor Dulgarian Trust ("the Trust") requesting a superpriority administrative expense claim for unpaid rent due under a real estate lease that was assumed by the Debtor. Unified Management Corp. of Rhode Island Inc. ("Unified"), itself an administrative expense creditor, objects, arguing that the Trust should share on a pro-rata basis with all other 11 U.S.C. § 503 expense claimants. Unified cites the absence of any authority in the Code or in the case law for granting the Trust the superpriority treatment that it demands. At issue is the status of a $62,459 claim for pre and post-petition defaults under a lease that was assumed under 11 U.S.C. § 365. For the reasons discussed below, we conclude that the Trust's claim is not entitled to superpriority status.

## BACKGROUND

Peaberry's owned and operated several cafeteria style restaurants, and at the time of this Chapter 11 filing on July 26, 1994, one of said restaurants leased real estate owned by The Krikor Dulgarian Trust. On September 22, 1994, the Debtor filed a motion to assume the subject lease and to continue its operation there, and on October 12, 1994, by endorsement order, the motion was granted. In the motion to assume the lease the Debtor stated, "[a]s adequate assurance of future performance, that [sic] the debtor shall pay all rental arrearages in full on these locations from the proceeds of the sale of the debtor's assets." On December 28, 1994, the Debtor filed a notice of intended sale of the assets as a going business, and on January 19, 1995, the sale was approved by the Court. On February 1, 1995, Unified filed an administrative expense claim against the Debtor in the amount of $16,128.02, for employee services provided to the Debtor during the Chapter 11 operation. On February 17, 1995, Peaberry's voluntarily converted to Chapter 7. At this time there are not sufficient funds to pay all Chapter 7 and Chapter 11 administrative claims in full.

The sale of the assets brought $100,804 into the estate. The Trust, which claims $27,037 for pre-petition rent and $35,423 in post-petition rent, for a total claim of $62,460, argues that § 365(b)(1) creates a condition precedent to assumption which entitles it to superpriority treatment. Under this section, the debtor is required to cure, or provide "adequate assurance" that it will promptly cure the default under the lease prior to assumption. *See* 11 U.S.C. § 365(b)(1).

Unified argues that there is no language in the Code to support the Trust's argument. Additionally, Unified argues, on equitable grounds, that by providing the employees who operated the Debtor's business post-petition, thereby making possible the sale of a going business, its services were of equivalent importance to those of the Trust and therefore, both creditors should be treated equally in the distribution scheme.

## DISCUSSION

In previously addressing a request for superpriority status under § 365, we ruled that a lessor's claims for rent and other sums due under a lease during the gap period between the bankruptcy filing and assumption or rejection of the lease under § 365 are not entitled to superpriority status. *In re Almac's Inc.*, 167 B.R. 4, 7 (Bankr.D.R.I.1994). In *Almac's*, there were a number of leases that the Debtor had neither assumed nor rejected, and during the gap period it was not making payments to lessors as required under § 365(d)(3).[1] *Id.* at 6. We acknowledged the unique position of lessors as creditors in bankruptcy and held that prior to assumption or rejection of the lease, the debtor is required to perform all lease obligations, but that the lessors' claims were not entitled to superpriority treatment. *Id.*

In the instant case we are dealing with a claim for monetary defaults that arose under the lease before Peaberry's assumption. Under § 365(b)(1), if the Debtor is in default under an unexpired lease, the trustee or debtor "may not assume [the unexpired lease] unless at the time of assumption ... the trustee ... cures, or provides adequate assurance that the trustee will promptly cure such defaults." While *Almac's* is not factually identical with this case, we see no reason to depart from its rationale and conclusion, or to carve out an exception here for the Dulgarian Trust. We read §§ 365(d)(3) (the provision at issue in *Almac's* ), and 365(b)(1), which are similarly worded, to both require an election early on by the Chapter 11 debtor or trustee. We also note, however, that Congress has not enacted language that creates or authorizes a superpriority administrative claim for rent, in aid of § 365(d)(3). *In re Granada, Inc.*, 88 B.R. 369, 373 (Bankr. D.Utah 1988). Nor has Congress enacted any statute that grants a superpriority administrative claim for rental arrearage, in

1. This section states in part that: "[t]he trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." 11 U.S.C. § 365(d)(3).

accordance with section 365(b)(2). "Priorities are fixed by Congress, and courts are not free to fashion their own rules of super-priorities or sub-priorities within any given priority class." *Id.* "In the absence of such Congressional direction, this court agrees that it would be inappropriate to imply the existence of an automatic superpriority status." *Id.* We conclude here that under *either* section, " 'the immediate payment of the lessor's claim does not constitute a superpriority, and that such payment ... [is] subject to the trustee's right to seek recovery of all or part of the payment in the event that there are insufficient funds to pay all other administrative expense claimants in full.' " *Almac's,* 167 B.R. at 7–8 *quoting In re Granada, Inc.,* 88 B.R. at 372.

Recently, the U.S. Supreme Court in *U.S. v. Noland,* —— U.S. ——, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996), ruled that the "bankruptcy court may not equitably subordinate claims on a categorical basis in derogation of Congress's scheme of priorities." *Id.* at ——, 116 S.Ct. at 1525. The Internal Revenue Service filed claims for taxes, interest and penalties that accrued after the debtor sought relief under Chapter 11, but before the case was converted to Chapter 7. *Id.* at ——, 116 S.Ct. at 1525. The Bankruptcy Court held that the claims filed by the IRS were entitled to first priority as administrative expenses, however the penalty claim was equitably subordinated to the claims of unsecured general creditors. *Id.* at ——, 116 S.Ct. at 1525–1526. The Supreme Court stated: "Congress could have, but did not, deny noncompensatory, post-petition tax penalties the first priority given to other administrative expenses, and bankruptcy courts may not take it upon themselves to make categorical determinations under the guise of equitable subordination." *Id.* at ——, 116 S.Ct. at 1528. Similarly here, if Congress wanted lessors to receive superpriority administrative treatment of claims based on pre-assumption defaults under assumed leases, it would have said so. In addition, if Congress simply forgot to include *superpriority claim status* when it was bestowing upon lessors all of the other § 365 advantages they now enjoy, such oversight may not be corrected judicially.

In a case similar to the instant case, the Debtor in *In re Mushroom Transp. Co., Inc.,* 78 B.R. 754 (Bankr.E.D.Pa.1987), assumed an unexpired nonresidential lease and was ordered to pay both pre-petition and post-petition rent and tax obligations. *Id.* at 757. The parties agreed to cure the pre-petition default over a four month period. *Id.* at 761. The debtor paid part of the obligation, but failed to make the remaining tax and rent payments. *Id.* at 757. Thereafter, the case was converted to Chapter 7. The Court stated that "the lease was assumed when the order was entered granting the motion, and the debtor's failure to cure simply represents a post-assumption breach of the lease.... This, in turn, would give rise to an administrative claim." *Id.* at 761. The Court held "that the order [granting the motion to assume the lease] has a legal effect of granting the Debtor an administrative claim." *Id.* at 762.

 Based upon the foregoing discussion, and the cases referenced therein, and because of the complete dearth of authority for the relief requested by the Krikor Dulgarian Trust, its claim is allowed as a "regular" administrative expense claim, and will share the funds available for distribution, pro-rata, with all other creditors of the same class.

Enter Judgment consistent with this opinion.