### In re PEABERRY'S LTD.

### The KRIKOR DULGARIAN TRUST, Creditor–Appellant,

### v.

### UNIFIED MANAGEMENT CORP. OF RHODE ISLAND, INC., Creditor–Appellee, Matthew J. McGowan, Esq., Chapter 7 Trustee, Trustee–Appellee.

### BAP No. RI 96–035.

United States Bankruptcy Appellate Panel of the First Circuit.

Feb. 12, 1997.

Andrew S. Richardson, Boyajian, Harrington & Richardson, Providence, RI, for Krikor Dulgarian Trust.

Joseph Avanzato, Adler Pollock & Sheehan Inc., Providence, RI, for Unified Management Corp. of Rhode Island, Inc.

Matthew J. McGowan, Salter, McGowan & Swartz, Providence, RI, for Matthew J. McGowan, Chapter 7 Trustee.

Before GOODMAN, HAINES and CARLO, Bankruptcy Judges.

HAINES, Bankruptcy Judge.

Krikor Dulgarian Trust, former landlord of chapter 11 debtor Peaberry's, Ltd., appeals the bankruptcy court's denial of its motion seeking full payment of pre-assumption rent arrearages from proceeds of the sale of Peaberry's assets. Krikor Dulgarian's motion was opposed below by another of Peaberry's chapter 11 administrative creditors, Unified Management Corporation of Rhode Island, Inc., the appellee here.

The bankruptcy court held that, given Peaberry's administrative insolvency, to grant Krikor Dulgarian's motion would be to recognize a "superpriority" claim for lease arrearages, that the Bankruptcy Code does not authorize such treatment and, therefore, that it could not grant the motion. *In re Peaberry's, Ltd.*, 198 B.R. 644 (Bankr.D.R.I.1996).

We hold that Krikor Dulgarian's entitlement to full payment of pre-assumption rent arrearages follows under the terms of the bankruptcy court's earlier-entered order authorizing Peaberry's assumption of the Krikor Dulgarian lease, that the assumption order was validly entered pursuant to § 365(b)(1) of the Code and, therefore, that

Krikor Dulgarian's motion should have been granted.[1] Accordingly, we reverse.

### Jurisdiction

The order denying Krikor Dulgarian's motion for payment is a final order from which appeal to the Bankruptcy Appellate Panel lies under 28 U.S.C. § 158(c)(1). *See In re Saco Local Dev. Corp.*, 711 F.2d 441, 445–46 (1st Cir.1983) (orders conclusively determining creditor's claim or priority are appealable).

### Facts

Drawn from the bankruptcy court's unchallenged findings, *In re Peaberry's, Ltd.*, 198 B.R. at 645, the pertinent facts are as follow. Peaberry's, which operated restaurants at several Rhode Island locations, including one on real estate owned by Krikor Dulgarian, voluntarily filed for chapter 11 relief on July 26, 1994. At filing it owed Krikor Dulgarian $27,037.00 in unpaid rent. Peaberry's soon concluded that it would sell its assets as a going concern. Anticipating such a sale, it moved to assume the Krikor Dulgarian lease and on October 12, 1994, after notice and without objection, the court granted the motion. *See* R.I.Local Bankr.R. 10(d); Fed.R.Bankr.P. 6006, 9014. As set forth in the motion, and as authorized by the bankruptcy judge, assumption terms included the requirement that "[a]s adequate assurance of future performance, the debtor shall pay all rental arrearages in full ... from the proceeds of the sale of the debtor's assets." As of the assumption date, those arrearages (which by then included substantial post-petition rent) had climbed to $62,-460.00.

The bankruptcy court approved a going concern sale of Peaberry's assets on January 19, 1995. The transaction included assignment of the Krikor Dulgarian lease to the purchaser. The sale, which realized $100,-804.00 for the estate, closed without disbursements to Krikor Dulgarian in respect to its rent claims. On February 1, 1995, Unified, which had no pre-petition claims against Peaberry's, filed its $16,128.02 administrative claim for personnel and services it provided the debtor's post-petition operations. On February 17, 1995, Peaberry's voluntarily converted its case to chapter 7.

With its lease arrearages remaining unpaid, Krikor Dulgarian moved to compel their payment, asserting that the assumption order required it. Although Peaberry's chapter 7 trustee agreed, Unified objected. With it plain that Peaberry's estate held insufficient assets to pay all chapter 11 administrative claimants, the bankruptcy judge denied the motion. This appeal ensued.

### Standard of Review

■ The bankruptcy court based its disallowance of Krikor Dulgarian's motion seeking full payment of Peaberry's rental arrearages exclusively on legal grounds. *In re Peaberry's, Ltd.*, 198 B.R. at 645–46. The appellant's challenge to the order raises legal issues only. We review *de novo* the bankruptcy court's legal conclusions. *Concrete Equip. Co. v. Fox (In re Vigil Bros. Constr., Inc.)*, 193 B.R. 513, 516 (9th Cir. BAP 1996); *Citibank (South Dakota) N.A. v. Lee (In re Lee)*, 186 B.R. 695, 697 (9th Cir. BAP 1995).

### Discussion

#### 1. The Decision Below.

When Krikor Dulgarian insisted that the terms of the assumption order be honored and Unified objected, the bankruptcy judge acknowledged the assumption order's existence and terms, but proceeded to analyze Krikor Dulgarian's claim as though its rights vis-a-vis the estate and other creditors had not already been determined. He first analyzed the sharply divergent lines of authority treating the relative priorities of landlords' claims for post-petition rent and the claims of other administrative creditors under § 365 and § 503. *In re Peaberry's, Ltd.*, 198 B.R. at 645–46. *Compare, e.g., In re Brennick*, 178 B.R. 305, 308 (Bankr.D.Mass.1995) (section 365(d)(3) entitles landlord to immediate, full payment of post-petition rent, not subject to reduction to pro rata administrative share and disgorgement if estate becomes adminis-

---

1. Unless otherwise indicated, all references to statutory sections are to the Bankruptcy Reform

Act of 1978, as amended, ("Bankruptcy Code" or "Code"), 11 U.S.C. § 101 *et seq.*

tratively insolvent; court may issue order under § 105(a) to require payment of post-petition arrears); *In re Telesphere Communications, Inc.,* 148 B.R. 525, 531–32 (Bankr. N.D.Ill.1992) (same); *with In re Almac's, Inc.,* 167 B.R. 4, 7–8 (Bankr.D.R.I.1994) (landlord's claim for rent accruing in "gap" period between filing and assumption or rejection is not entitled to "superpriority" treatment); *In re Granada, Inc.,* 88 B.R. 369, 375 (Bankr.D.Utah 1988). *See generally,* Joshua Fruchter, *To Bind or Not to Bind—Bankruptcy Code § 365(d)(3): Statutory Minefield,* 68 Am.Bankr.L.J. 437 (1994). He then concluded that Krikor Dulgarian was demanding a priority of payment above and beyond that which § 503 authorized and, therefore, that its demand had to be rejected. *In re Peaberry's, Ltd.,* 198 B.R. at 646.

## 2. *Issues on Appeal.*

Krikor Dulgarian's essential point on appeal is simple: It asserts that the bankruptcy court's order authorizing Peaberry's to assume its lease effectively and finally foreclosed any future dispute regarding its entitlement to be paid pre-assumption arrearages from the fund that flowed from the asset sale. Unified advances two points in support of the bankruptcy court's order denying Krikor Dulgarian full payment. It urges, first, that the assumption order did not provide Krikor Dulgarian first claim on the sales proceeds and, second, that it could not do so under pertinent bankruptcy principles.

## 3. *Resolving the Issues.*

■ To resolve this appeal we need not reconcile or choose among divergent authorities addressing the relative priorities of landlords' pre- and post-petition rent claims and other administrative claims. We conclude only that, given the propriety of the assumption order and the absence of any timely challenge to its substance or regularity,[2] the

bankruptcy court was duty bound to enforce it according to its terms. Creditors who were in the case at the time the assumption order entered were duly apprised of its substance and had the opportunity to be heard; those, like Unified, who arrived on the scene later were able to inform themselves of its terms and to arrange their affairs accordingly.[3]

We observe that, under § 365(b)(1), Krikor Dulgarian was entitled to insist that, as a condition of Peaberry's lease assumption, it be provided with a "cure" or "adequate assurance" that Peaberry's would "promptly cure" pre-assumption defaults. § 365(b)(1)(A). Of course, it could have settled for less, but a straightforward reading of the assumption order belies the contention that it did. The order plainly states that as "adequate assurance" of its lease performance Peaberry's would pay "all rental arrearages in full" from the proceeds of its asset sale.[4]

In the face of the assumption order's clarity, and its consistency with § 365(b)(1)(A)'s terms, we simply cannot accept Unified's contention that the order left Krikor Dulgarian at risk that the estate's potential future insolvency would dilute its right to full payment of Peaberry's back rent. Indeed, it was against such an eventuality that the lease assumption order was premised on the condition that unpaid pre-assumption rent be paid in full from the asset sale proceeds.

Unified portrays such an arrangement as "unfair" because it (and other post-petition creditors) was situated similarly to Krikor Dulgarian. As Unified sees it, each party that dealt with the debtor-in-possession, including Krikor Dulgarian, chanced administrative insolvency (and pro rata payment of administrative claims). But, unlike other post-petition creditors, Krikor Dulgarian had

---

2. At oral argument, Unified's counsel agreed that the assumption order was regularly entered after appropriate notice and hearing.

3. Unified held no prepetition claim against the debtor. Its claim arose as a consequence of post-petition payment defaults and led it to file its administrative claim some three and one-half months after the lease assumption order entered.

4. Although, for unexplained reasons, Krikor Dulgarian was not paid at closing, Unified does not contend that Krikor Dulgarian waived its assumption order rights by permitting the sale to close without obtaining payment.

no choice but to deal with the debtor until its lease was assumed or rejected. § 365(a). *See Frito–Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 954–55 (2nd Cir.1993) (recognizing § 365 as creating a mechanism by which debtors can force others to do business with them, regardless of the existence of the debtors' filing of a petition in bankruptcy); *In re Almac's, Inc.*, 167 B.R. at 7 ("[L]essors of real estate, unlike post-petition creditors, do not have the choice of whether to provide the Debtor with post-petition services."); *cf. Thinking Machs. Corp. v. Mellon Fin. Serv. Corp. # 1 (In re Thinking Machs. Corp.)*, 67 F.3d 1021, 1024 (1st Cir.1995) (noting that, unlike other creditors, landlords are, at least for a time locked in to lease relationship with chapter 11 debtors). Unified, on the other hand, was not constrained to deal with the debtor-in-possession at all. Furthermore, § 365(b)(1)(A), a provision enacted for the specific purpose of setting permissible conditions for lease assumptions, expressly empowered Krikor Dulgarian to insist upon and obtain adequate assurance of cure as a prerequisite to Peaberry's lease assumption.[5]

Unified's opposition to Krikor Dulgarian's motion for payment asked the bankruptcy court to return to the assumption order and revise its terms.[6] Although the court

obliged, it was error to do so. We need not conclude as a matter of law that parties-in-interest waived the right to challenge the assumption order by failing to appeal it immediately after its entry.[7] Unified's challenge to its terms, presented months *after* the lease had been assumed and well *after* it had been assigned as part of the asset sale, was lodged too late. Krikor Dulgarian had by then foregone alternatives to seeking the adequate assurance provided by the assumption order (*e.g.*, asking for relief from stay), the debtor had engineered an asset sale—based on the platform provided by the lease, Krikor Dulgarian had assented to the lease's assignment, and a third party assignee had taken over as lessee.

It would have been error for the bankruptcy court to have imposed Peaberry's lease assumption on Krikor Dulgarian over its objection without honoring § 365(b)(1)'s requirement for cure or adequate assurance of cure. *See Kroger Co. v. SuperX of Arizona, Alabama and Georgia Corp. (In re Defender Drug Stores, Inc.)*, 127 B.R. 225, 233 (9th Cir. BAP 1991) (recognizing that prior to assumption a debtor must cure or provide adequate assurance of cure of any default under a lease); *In re F.W. Restaurant Assocs., Inc.*, 190 B.R. 143, 147–48 (Bankr.

---

5. We further note, in regard to Unified's concerns for "fairness" and "equity," that although all Peaberry's creditors banked on a successful asset sale to realize some dividend, and the court expressly authorized lease assumption and assignment in the context of the sale, Krikor Dulgarian was the only creditor who became prospectively bound as a consequence of the assumption and assignment.

6. Unified did not timely seek reconsideration, Fed.R.Bankr.P. 9053, of the assumption order. Nor did it invoke Fed.R.Bankr.P. 9024 and Fed.R.Civ.P. 60(b) in an attempt to modify or obtain relief from the order. Had it done so, the picture would be clearer. Rule 60(b) plainly provided no avenue to avoid the assumption order's terms.

7. It is questionable whether Unified, which hadn't yet filed its proof of claim, was in any position to appeal the October 12, 1994, assumption order. Thus, our holding turns on the facts of this case, particularly on post-assumption developments. It is arguable that garden variety lease assumption orders treating the rights of chapter 11 lessees are of a character that *require*,

rather than merely *permit*, immediate appeal. *See* Fed.R.Bank.P. 8002(a); *Reichman v. United States Fire Ins. Co. (In re Kilgus)*, 811 F.2d 1112, 1116 (7th Cir.1987) (discussing principles determining whether bankruptcy court orders must, or may, be appealed immediately); *see generally Estancias La Ponderosa Dev. Corp. v. Harrington (In re Harrington)*, 992 F.2d 3, 5–6 nn. 2, 3 (1st Cir.1993) (explaining appealability of bankruptcy court orders); *but see Elliott v. Four Seasons Properties (In re Frontier Properties, Inc.)*, 979 F.2d 1358, 1362–64 (9th Cir.1992) (trustee did not waive right to appeal lease assumption order by failing to file appeal immediately after its entry).

Certainly, lease assumption orders may be appealed at once. *See In re Thinking Machs. Corp.*, 67 F.3d at 1022 (appeal addressing substance of lease rejection order); *Willamette Waterfront, Ltd. v. Victoria Station, Inc. (In re Victoria Station, Inc.)*, 875 F.2d 1380, 1382 (9th Cir.1989). Today's holding commends parties-in-interest who disagree with lease assumption orders to consider immediate appeal and, to preserve the *status quo*, to consider seeking a stay. *See* Fed.R.Bankr.P. 8005 (stay pending appeal).

# 10

D.Conn.1995) (recognizing that under statutory framework of § 365 executory contract cannot be assumed where debtor has failed to provide for cure of defaults). Similarly, it was error for the court to rewrite the assumption order retroactively to take away that to which the landlord was entitled on the assumption date and that upon which it relied after the assumption.[8]

Given the necessity that the assumption order operate finally on the rights of parties to the lease, the amount of time that passed between the order's entry and Unified's challenge to its terms, the fact that the order had been implemented, and that, through sale, an assignment had been fully consummated, it was too late in the day for the bankruptcy court to rewrite the assumption order's terms. *Cf. In re Andreuccetti*, 975 F.2d 413, 418 (7th Cir.1992) (discussing equitable considerations pertinent to mootness concerns regarding appellate review of confirmation orders), *cited in Institut Pasteur, et al, v. Cambridge Biotech Corp. (In re Cambridge Biotech)*, 104 F.3d 489, 491 (1st Cir.1997); *Rochman v. Northeast Utilities Service Group (In re Public Service Company of New Hampshire)*, 963 F.2d 469 (1st Cir.1992) (same).[9]

### Conclusion

For the reasons set forth above, we conclude that the bankruptcy court's order denying Krikor Dulgarian's motion seeking payment of all pre-assumption lease arrearages in full from the proceeds of the sale of the debtor's assets was error. It is hereby **REVERSED.**

---

8. Under no fair reading of Fed.R.Bankr.P. 7054(b) and Fed.R.Civ.P. 54(b) could the assumption order be viewed as a "judgment" as to "fewer than all ... claims or parties" in a multiple-claim or multiple-party proceeding. *See Nichols v. Cadle Co.*, 101 F.3d 1448 (1st Cir. 1996). Thus, Rule 54(b) certification would not be a prerequisite to appeal and, absent such certification, the court would not be free to revisit and revise its lease assumption determination.

9. The case before us concerns a bankruptcy judge's revision of a prior court order that he himself had entered. However, the same princi-

ples that govern mootness in appellate proceedings pertain to our review of his action. In *Bank of New England v. BWL, Inc.*, 121 B.R. 413, 417 (D.Me.1990), Judge Carter, considering an appeal from an order of the bankruptcy court authorizing a debtor to borrow, where funds had already been disbursed and spent, considered the matter moot, observing "eggs [could not] be unscrambled." In our case, well before Unified complained and the judge changed course, the eggs were scrambled, the omelet served and eaten. It was too late to change the menu.