**In re J.T. RAPPS, INC., d/b/a J.T. Rapps Sports Closet, Debtor.**

**Bankruptcy No. 94–40264–HJB.**

United States Bankruptcy Court, D. Massachusetts.

Sept. 29, 1998.

---

Peter M. Stern, Office of Peter M. Stern, Springfield, MA, Chapter 7 Trustee.

Donald Lassman, Boston, MA, for Landlord.

Jonathan R. Goldsmith, Hendel & Collins, P.C., Springfield, MA, for Debtor.

## MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court for determination is the "Motion of Landlord for Order Directing Chapter 7 Trustee to Make Immediate Payment of Administrative Rent Claim" (the "Payment Motion") filed by Woburn Mall Associates (the "Landlord"). The issue for determination is whether section 365(d)(3) of

the Bankruptcy Code requires that a commercial lessor's Chapter 11 administrative claim for postpetition, pre-rejection rent be paid immediately with priority over other unpaid Chapter 11 administrative claims and unpaid Chapter 7 administrative claims where the estate is administratively insolvent.

## I. Facts

The facts are not in dispute. At the time of case commencement, J.T. Rapps, Inc., d/b/a J.T. Rapps Sports Closet (the "Debtor") was in the business of selling licensed sports apparel and sports novelties at retail. The Debtor's business operated out of several locations, including several shopping centers in the northeast United States.

On May 7, 1991, the Debtor entered into a lease agreement (the "Lease") with the Landlord to rent a store in the Woburn Mall, a shopping center in Woburn, Massachusetts, for a period of five years. The Lease provided that on the first day of each month the Debtor would pay a base rent of $1,705.17, in addition to monthly assessments for real estate taxes, insurance, and common area charges.

The Debtor filed a Chapter 11 petition in this Court on January 21, 1994. Pursuant to 11 U.S.C. § 365(d)(4),[1] the deadline within which the Debtor was required to assume or reject the Lease (or seek an extension) was March 21, 1994. That deadline was later extended to May 20, 1994. The Lease was finally deemed rejected on May 20, 1994 when the Debtor failed to act to assume or reject it. 11 U.S.C. § 365(d)(4). However, while occupying the premises, the Debtor had defaulted in rental payments for the months of February, March, April and May. On May 13, 1994, the Landlord filed a motion seeking immediate payment of the rental obligations, relief from the automatic stay to exercise its rights under the Lease, and an

---

1. Section 365(d)(4) of the Bankruptcy Code provides in relevant part:

    [I]n a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such non-residential real property to the lessor.

    11 U.S.C. § 365(d)(4).

order compelling the Debtor to vacate the premises.

On June 8, 1994, the Court held a hearing on the Landlord's motion. By that time, the Lease had already been rejected by operation of law. Therefore, the right to possession was no longer at issue and estate's postpetition obligation could be fixed. In the face of uncertainty over the prioritization of that obligation, it was agreed that the issue would await a determination as to the solvency of the case's Chapter 11 administration. Accordingly, at the close of the hearing, this Court entered an order, by agreement of the parties, granting the Landlord relief from the automatic stay as well as "a claim in the amount of $8,990.27, the priority and payment of which [would] be determined on motion by a party in interest." The amount of the claim granted to the Landlord represented the Debtor's postpetition contractual rental obligation accrued between February and May, 1994.

Soon thereafter, the Landlord filed a motion, assented to by the Trustee, seeking to amend the June 8, 1994 order. The Landlord complained that the order could be read to limit the Landlord's *entire* claim to the sum of $8,990.27. The Landlord explained that it was owed additional monies on account of Debtor's prepetition breaches of the Lease as well as damages resulting from rejection of the Lease. Consequently, the order was amended to read: "claimant is granted an *administrative* claim in the amount of $8,990.27, the priority and payment of which will be determined by motion by a party in interest."

The case was subsequently converted to one under Chapter 7. Almost three years later, the Landlord filed the instant Payment Motion, seeking an order compelling the Chapter 7 Trustee to make immediate payment of the Chapter 11 administrative rent claim.

## II. *Positions of the Parties*

The Landlord argues that the language of § 365(d)(3) requiring the "trustee" to "timely perform" requires that a debtor in possession, or Chapter 11 or 7 Trustee (hereinafter, jointly and severally, the "estate representa-

tive") pay a debtor's commercial lease obligations when they become due regardless of the administrative solvency of the bankruptcy estate. The Landlord, therefore, concludes that it is entitled to immediate payment in full of all accrued postpetition prerejection rent.

The Trustee argues that immediate payment of the Landlord's administrative claim is inappropriate because there are insufficient assets in the estate to pay all accrued administrative expenses. The Trustee explains that there is just over $30,000 on hand in the Chapter 7 bankruptcy estate, while the Chapter 7 administrative expenses are approximately $12,000 and the Chapter 11 administrative expenses approximate $47,500. The Trustee asserts that immediate payment of the Landlord's claim in full would constitute the granting of an improper superpriority for the Landlord's claim over Chapter 7 administrative claims and other Chapter 11 administrative claims, and reasons that because § 365(d)(3) does not explicitly grant commercial lessors a superpriority claim, one should not be read into the statute.

## III. *Discussion*

Section 365(d)(3) of the Bankruptcy Code provides in relevant part:

The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

11 U.S.C. § 365(d)(3). That performance obligation applies equally to all estate representatives. 11 U.S.C. § 103(a); 11 U.S.C. § 1107(a).

Section 365(d)(3) was added to the Bankruptcy Code by the Bankruptcy Amendments and Federal Judgment Act of 1984, Pub.L. 98–353, 98 Stat. 333 (1984) (the "1984 Amendments"). Prior to the 1984 Amendments, debtors and trustees were not required to immediately pay rental obligations during the period between the filing of the case and the date of the assumption or rejec-

tion of a nonresidential real property lease. *In re New Almacs, Inc.*, 196 B.R. 244, 247 (Bankr.N.D.N.Y.1996). Therefore, a commercial lessor was forced to extend credit to the bankruptcy estate during the period in which the estate representative decided whether to assume or reject the lease. *See In re Leisure Time Sports, Inc.*, 189 B.R. 511, 513 (Bankr.S.D.Cal.1995). The lessor's rental claim was treated as an administrative claim, usually measured by the reasonable value of the estate's use and occupancy of the premises, and was paid, if at all, with other administrative claimants. *New Almacs*, 196 B.R. at 247.

The amended § 365(d)(3) was intended to ease the immediate financial burden borne by the lessors of nonresidential real property by requiring the estate representative to "timely perform" the debtor's obligations under the lease. *Towers v. Chickering & Gregory (In re Pacific–Atlantic Trading Co.)*, 27 F.3d 401, 403 (9th Cir.1994). The legislative history of § 365(d)(3) evidences Congress' belief that, "[t]his timely performance requirement [would] insure that debtor/tenants pay their rent, common area, and other charges [at the time required in the lease] pending the trustee's assumption or rejection of the lease." *In re Longua*, 58 B.R. 503, 505 n. 1 (Bankr. W.D.Wis.1986) (quoting H.R.Conf.Rep. No. 882, 98th Cong., 2d Sess. (1984), reprinted in 1984 U.S.C.C.A.N. 576). In interpreting the effect of the amended § 365(d)(3), courts have uniformly held that it requires that the estate representative pay the rent as it becomes due. *Great Western Savings Bank v. Orvco, Inc. (In re Orvco, Inc.)*, 95 B.R. 724, 727 (9th Cir. BAP 1989) (citing cases); *see also In re Rare Coin Galleries of America, Inc.*, 72 B.R. 415, 416 (D.Mass.1987).

Nevertheless, while Congress clearly intended that commercial landlords receive timely postpetition pre-rejection rental payments, *see All for A Dollar, Inc.*, 174 B.R. 358, 360 (Bankr.D.Mass.1994), the language and legislative history of the statute do not specify the remedy for the estate representative's non-compliance, or the treatment of unpaid postpetition pre-rejection rental payment claims. As one court explained:

> If the lease were assumed, the trustee would have to bring the rental obligations current or make other arrangements with the landlord to cure the prior lease obligations, but in a case where the trustee has not made the post-petition, pre-rejection lease payments under § 365(d)(3), and then subsequently rejects the lease, there is a question as to how the unpaid rental payments should be treated by the court.

*In re Amber's Stores, Inc.*, 193 B.R. 819, 822 (Bankr.N.D.Tex.1996). This failure to provide an express remedy to lessors in the event of a default under § 365(d)(3) has created much difference of opinion. *See In re Rich's Dep't Stores, Inc.*, 209 B.R. 810, 814–15 (Bankr.D.Mass.1997) (collecting cases); *see also* 3 *Collier on Bankruptcy* ¶ 365.04[3][f] (15th ed. rev.1996).

Most courts do agree on at least two aspects of § 365(d)(3). *In re Brennick*, 178 B.R. 305, 307 (Bankr.D.Mass.1995). First, they acknowledge that its clause "notwithstanding section 503(b)(1) of this title" waives the requirement for an express order authorizing payment of the administrative rent claim.[2] *Id.* Second, they agree that the lessor is entitled to be paid the full amount of the rent and other charges due under the lease without reference to traditional § 503(b)(1) factors such as actual use and reasonable value. *New Almacs*, 196 B.R. at 248.[3]

---

2. Section 503(b)(1)(A) of the Bankruptcy Code provides:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
> (1)(A) the actual, necessary costs and expenses of preserving the estate including wages, salaries, or commissions for services rendered after the commencement of the case[.]

11 U.S.C. § 503(b)(1)(A).

3. *See Augusta Mall Partnership v. Twigland Fashions, Inc. (In re Twigland Fashions Inc.)*, 198 B.R. 199 (W.D.Tex.1996); *In re Amber's Stores, Inc.*, 193 B.R. 819 (Bankr.N.D.Tex.1996); *In re Wingspread Corp.*, 116 B.R. 915 (Bankr.S.D.N.Y. 1990); *In re Gillis*, 92 B.R. 461 (Bankr.D.Hawai'i 1988); *In re Granada*, 88 B.R. 369 (Bankr. D.Utah 1988); *In re O.P. Held, Inc.*, 77 B.R. 388 (Bankr.N.D.N.Y.1987); *In re Longua*, 58 B.R. 503 (Bankr.W.D.Wis.1986); *see also Maroon v. Four Star Pizza, Inc. (In re Four Star Pizza, Inc.)*, 135 B.R. 498 (Bankr.W.D.Pa.1992).

■ This Court has already determined, and the parties have agreed, that the Landlord has a Chapter 11 administrative expense claim of $8,990.27 for the Debtor's postpetition pre-rejection rental obligation. The current dispute relates only to whether that claim is entitled to immediate payment; in other words, whether the Landlord's claim is entitled to be paid immediately with priority over Chapter 7 administrative claims and other Chapter 11 administrative claims, where the estate is administratively insolvent.

Courts faced with the issue are divided between those which have determined that the lessor's claim is entitled to ordinary administrative priority (and therefore to be treated as any other unpaid administrative claim) and those which would afford the claim priority over some or all other administrative claimants. The United States Court of Appeals for the First Circuit has not yet addressed this question, and the decisions arising out of this district are split. *Compare In re Brennick*, 178 B.R. 305 (Bankr. D.Mass.1995) (finding that commercial landlord's unpaid postpetition, pre-rejection rent

claim is entitled to superpriority); *In re McCabe*, 212 B.R. 21 (Bankr.D.Mass.1996) (same) *with In re MJ 500, Inc.*, 217 B.R. 93 (Bankr.D.Mass.1998) (commercial landlord's unpaid rent claim was not entitled to priority over chapter 7 administrative claims).[4]

For the majority who reject any superpriority for a commercial lessor's unpaid postpetition pre-rejection administrative rent claim,[5] the Code's failure to expressly authorize superpriority status for such claimants is deemed fatal. *In re Bryant Universal Roofing, Inc.*, 218 B.R. 948, 953 (Bankr.D.Ariz. 1998) ("[Section] 507, which determines the priority status of administrative claimants, is noticeably silent as to any priority for claims arising under § 365(d)(3)."). Other courts also worry that granting superpriority status to a commercial lessor's claim particularly with respect to Chapter 7 administrative claims "undermines the incentive built into the priority that § 726 gives to Chapter 7 administrative claims." *MJ 500*, 217 B.R. at 95; *see also In re The Tandem Group, Inc.*, 61 B.R. 738, 741–42 (Bankr.C.D.Cal.1986). Section 726(b) provides that administrative

---

**4.** Two other courts within this circuit have commented on, but were not required to decide, whether a commercial lessor is entitled to a superpriority claim under the Code. In *Krikor Dulgarian Trust v. Unified Management Corp. of Rhode Island, Inc. (In re Peaberry's Ltd.)*, 205 B.R. 6 (1st Cir. BAP 1997), the First Circuit Bankruptcy Appellate Panel considered an appeal from a bankruptcy court's denial of a motion seeking full payment of pre-assumption postpetition rent. In that case, the Chapter 11 debtor filed a motion to assume the lease on a restaurant. The bankruptcy court granted the motion and further ordered the debtor to " 'pay all rental arrearages in full ... from the proceeds of the sale of the debtor's assets [as a going concern].' " *Peaberry's*, 205 B.R. at 7. After the sale closed and the case was converted to Chapter 7 the commercial lessor moved for immediate payment of its rent. The court denied the motion, holding that the lessor was not entitled to a superpriority under the Code. *Id.* The appellate panel reversed finding that it "need not reconcile or choose among divergent authorities addressing the relative priorities of landlord's pre- and post-petition rent claims and other administrative claims," *id*, because the "bankruptcy court's prior order established the priority of the landlord vis-a-vis the estate and the other creditors, and the bankruptcy court could not rewrite the assumption order's terms by denying immediate payment to the landlord of the rent

due." *In re Tel–Central Communications, Inc.*, 212 B.R. 342, 349 (Bankr.W.D.Mo.1997) (citing *Peaberry's*, 205 B.R. at 8–10).

Similarly, In *In re Rich's Dep't Stores, Inc.*, 209 B.R. 810 (Bankr.N.D.Mass.1997), Judge Feeney held that regardless of whether commercial lessors' postpetition, pre-rejection claims for rent and other charges could be accorded superpriority status, the court would require immediate full payment of such claims, with no possibility of later disgorgement if the Chapter 7 estate proved to be administratively insolvent, in order to enforce its prior orders requiring debtor to continue to perform the leasehold obligations.

**5.** *See Great Western Savings Bank v. Orvco, Inc. (In re Orvco, Inc.)*, 95 B.R. 724 (9th Cir. BAP 1989), *overruled on other grounds, Towers v. Chickering & Gregory (In re Pacific–Atlantic Trading Co.)*, 27 F.3d 401 (9th Cir.1994); *In re Bryant Universal Roofing, Inc.*, 218 B.R. 948 (Bankr. D.Ariz.1998); *In re Amber's Stores, Inc.*, 193 B.R. 819 (Bankr.N.D.Tex.1996); *In re Joseph C. Spiess, Co.*, 145 B.R. 597 (Bankr.N.D.Ill.1992); *Maroon v. Four Star Pizza, Inc. (In re Four Star Pizza, Inc.)*, 135 B.R. 498 (Bankr.W.D.Pa.1992); *In re Cardinal Indust., Inc.*, 109 B.R. 738 (Bankr. S.D.Ohio 1989); *In re Granada*, 88 B.R. 369 (Bankr.D.Utah 1988); *In re Dieckhaus Stationers of King of Prussia, Inc.*, 73 B.R. 969 (Bankr. E.D.Pa.1987); *In re Tandem Group, Inc.*, 61 B.R. 738 (Bankr.C.D.Cal.1986).

expenses incurred while a case is pending under Chapter 7 shall be paid prior to expenses of administration accrued under any other Chapter. 11 U.S.C. § 726(b).[6] The rationale for granting such a priority to Chapter 7 administrative claims is that "[t]hose who must wind up the affairs of a debtor's estate must be assured of payment, or else they will not participate in the liquidation or distribution of the estate." *In re Lochmiller Indust., Inc.*, 178 B.R. 241, 247 (Bankr.S.D.Cal.1995) (quoting H.R.Rep. No. 95–595, 95th Cong., 1st Sess. (1977) 186–87, reprinted in 1978 U.S.C.C.A.N. 5787, 6147). Therefore, according to these courts, granting priority status for a commercial lessor's rent claim over Chapter 7 administrative claims would violate the Bankruptcy Code's express priority scheme. *MJ 500*, 217 B.R. at 95.

A separate line of cases, however, holds that unpaid postpetition pre-rejection lease payments are entitled to superpriority status over all Chapter 7 and 11 administrative claims.[7] In fact, in the case of *In re Telesphere Communications, Inc.*, 148 B.R. 525 (Bkrtcy.N.D.Ill.1992), that court argued that § 365(d)(3) claims should not be labeled administrative expenses at all, but should be more properly characterized as operational payments made during a Chapter 11 case

under section 363(c)(1).[8] *Telesphere*, 148 B.R. at 531.

*In re Brennick*, 178 B.R. 305 (Bankr. D.Mass.1995), a case heavily relied upon by the Landlord, agreed with *Telesphere*, ruling that § 365(d)(3) claims were entitled to superpriority status under the Code. In *Brennick*, the court determined that the "clear command" of § 365(d)(3)—that the trustee "timely perform" the obligations of the debtor—required the trustee to pay such expenses immediately, and ruled that "[t]he command must be obeyed even though to do so grants a priority as a practical matter." *Brennick*, 178 B.R. at 307–08. Agreeing with *Telesphere*, the court reasoned that it would be inequitable to treat certain parties paid during a Chapter 11 case in the ordinary course of business better than the lessor forced by § 365(d)(3) to rent its property to the debtor during at least the first sixty day period of the case. *Id.* Relying on 11 U.S.C. § 105(a),[9] the court ordered immediate payment of the lessor's claim and held that the lessor would not be required to disgorge the payment if the estate funds later proved insufficient to pay other Chapter 11 and 7 administrative claimants. *Id.*

■ This Court agrees that the language of § 365(d)(3) requires an estate representative to make immediate payment of nonresidential lease obligations where the estate

---

6. Section 726(b) of the Bankruptcy Code provides:

> Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), (6), (7), or (8) of section 507(a) of this title, or in paragraph (2), (3), (4), or (5) of subsection (a) of this section, shall be made pro rata among claims of the kind specified in each such particular paragraph, except that in a case that has been converted to this chapter under section 1009*, 1112, 1208 or 1307 of this title, a claim allowed under section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion and over any expenses of a custodian superseded under section 543 of this title.

> 11 U.S.C. § 726(b).

7. *See Inland's Monthly Income Fund, L.P. v. Duckwall–ALCO Stores, Inc. (In re Duckwall–ALCO Stores, Inc.)*, 150 B.R. 965 (D.Kan.1993); *In re Rare Coin Galleries of America*, 72 B.R. 415

(D.Mass.1987); *In re Pudgie's Dev. of NY, Inc.*, 202 B.R. 832 (Bankr.S.D.N.Y.1996); *In re Brennick*, 178 B.R. 305 (Bankr.D.Mass.1995); *In re Telesphere Communications, Inc.*, 148 B.R. 525 (Bankr.N.D.Ill.1992).

8. Section 363(c)(1) of the Bankruptcy Code states:

> If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

> 11 U.S.C. § 363(c)(1).

9. Section 105(a) of the Bankruptcy Code, in relevant part, provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

representative can meet those obligations consistent with its obligations to others. However, where the estate is administratively insolvent and the estate representative fails to comply with § 365(d)(3), an *automatic* grant of superpriority status is more problematic. The difficulty with ordering immediate payment of the lessor's unpaid rent claim in every instance without regard to administrative solvency is that it mirrors a statutory superpriority (or subordination, depending on whether one is looking up or down) where none was explicated by § 365(d)(3). *In re Virginia Packaging Supply, Co.,* 122 B.R. 491, 495 (Bankr.E.D.Va. 1990). "If one claimant is to be preferred over others, the purpose should be clear from the statute." *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.),* 536 F.2d 950, 953 (1st Cir.1976) (quoting *Nathanson v. NLRB,* 344 U.S. 25, 29, 73 S.Ct. 80, 97 L.Ed. 23 (1952)); *see also United States v. Noland,* 517 U.S. 535, 543, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996) (courts are not free to use equitable or other principles to alter the statutory priorities set forth in the Code).

In at least three sections of the Bankruptcy Code, Congress explicitly provides a claim with blanket priority over another class of claims. Section 726(b) provides such priority to Chapter 7 administrative claims over Chapter 11 administrative claims. Section 364(c)(1) allows the court to afford superpriority status to postpetition borrowings when the debtor is unable to obtain unsecured credit. And section 507(b) claims receive superpriority status when adequate protection under § 361 fails. *See In re Buyer's Club Mkts., Inc.,* 115 B.R. 700, 702 (Bankr. D.Colo.1990); *see also Cardinal Indust.,* 109 B.R. at 742. Congress clearly understood how to provide superpriority status for claims it sought to prefer. "In absence of such Congressional direction with regard to section 365(d)(3) claimants 'it would be inappropriate to imply the existence of an automatic superpriority status.' " *In re Granada,* 88 B.R. 369, 373 (Bankr.D.Utah 1988) (quoting *In re Dieckhaus Stationers of King of Prussia, Inc.,* 73 B.R. 969, 973 (Bankr. E.D.Pa.1987)); *In re Tandem,* 61 B.R. 738, 742 (Bankr.C.D.Cal.1986) ("Had Congress intended to create a superpriority for subsec-tion 365(d)(3) it would have done so by express statutory language."); *see also Noland,* 517 U.S. at 543, 116 S.Ct. 1524 (1996) (courts may not alter the statutory priorities established by Congress under the Bankruptcy Code).

Further, denying a nonresidential real property lessor's claim superpriority status does not necessarily interfere with Congress' resolve to provide special protection for commercial lessors. *Bryant Universal,* 218 B.R. at 953. If an estate representative does not comply with its obligations under § 365(d)(3), the lessor is not without a remedy. *Dieckhaus Stationers,* 73 B.R. at 974. The lessor may: (1) file a motion seeking an order compelling the estate representative to immediately pay the rental obligations before rejection, *see Granada,* 88 B.R. at 374; (2) move for an order requiring the estate representative to immediately surrender the premises, *Orvco,* 95 B.R. at 727; (3) file a motion for relief from stay to have the estate representative evicted from the premises, *Dieckhaus Stationers,* 73 B.R. at 974; or (4) move for an order to convert the case to one under Chapter 7 for failure to comply with § 365(d)(3).

An estate representative who defaults under § 365(d)(3) will run the risk that the automatic stay will be terminated, its right of possession of the premises will be terminated, or that its case will be converted to one under Chapter 7. *See In re Mr. Gatti's, Inc.,* 164 B.R. 929, 944 (Bankr.W.D.Tex.1994). Failure to comply with § 365(d)(3) also jeopardizes the estate representative's right to assume the lease later, thereby risking loss of a valuable asset in the early stages of the bankruptcy case. *See In re Patella,* 102 B.R. 223, 225 (Bankr.D.N.M.1989). "Any rational thinking [estate representative] would be ill-advised to believe that intentional inaction provides them only with an upside position in light of the[ ] remed[ies] available to the lessor]." *Gatti's,* 164 B.R. at 944.

However, while it is true that Congress intended that estate representatives not exploit the involuntary post-bankruptcy performance of commercial lessors, and likely contemplated that non-compliance with

§ 365(d)(3) would have negative consequences for the estate representative, there is no evidence that Congress intended that the remedy for non-compliance be fashioned at the expense of those not responsible for the offense. Nor is it always true that other administrative creditors are necessarily benefitted by an estate representative's failure to perform its § 365(d)(3) obligations. A failure to pay rent may conceal from creditors operational losses or an ongoing dissipation of estate assets. And, ironically, the combination of the failure to pay the rental obligations and the subsequent characterization of the lessor's claim as one with superpriority might unfairly benefit the lessor. If an early complaint by a lessor would generate rejection of the lease, leaving the lessor with no tenant and only rejection damages treated as a prepetition claim (§ 365(g)(1)), it might behoove a commercial lessor to sit idly by, accruing a superpriority claim outside of the viewing screen of most other creditors while the claims of the latter are correspondingly reduced. By appearing to "drop the ball," the lessor might be better off than if it had timely acted.[10]

On the other hand, if a commercial lessor, upon discovering a payment default, must immediately act to demand its rights under § 365(d)(3), other creditors will be provided with appropriate notice of the problem and any proposed solution, including, if determined by the court to be of benefit to the estate, payment or superpriority for some or all of the lessor's claims. And in that case, should the court order the estate representative to make payment to the lessor (or order superpriority of the lessor's administrative claims to effectuate an order for payment) as a condition of the estate representative's right to remain in possession of the premises, other creditors would have no cause for complaint. *See Krikor Dulgarian Trust v. Unified Management Corp. of Rhode Island, Inc. (In re Peaberry's Ltd.)*, 205 B.R. 6 (1st Cir. BAP 1997); *In re Rich's Dep't Stores, Inc.*, 209 B.R. 810 (Bankr.D.Mass.1997).

This Court very much agrees with Judge Kenner's observation in *McCabe* that after examining the different positions taken by various courts on this issue, one is left with the conclusion that none is "completely satisfactory." *McCabe*, 212 B.R. at 22. The same could properly be said of the position taken here. Nonetheless, this Court's refusal to accord automatic superpriority status to all postpetition pre-rejection commercial lease claims appears to more closely conform to the distribution scheme of § 726 of the Bankruptcy Code and to draw least upon § 105(a) to achieve the result intended by Congress.

## IV. *Conclusion*

Based on the foregoing analysis, this Court holds that § 365(d)(3) does not afford automatic superpriority status to post-petition pre-rejection nonresidental real property rent claims. Accordingly, the Payment Motion is DENIED.

---

**10.** Presumably, the "infield fly rule" was adopted to address analogous concerns.